## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

Docket Number(s): 25-764

Caption [use short title]

Motion for: Emergency Motion for Expedited Appeal

Walden v. Kosinski, et al.

Set forth below precise, complete statement of relief sought:

Plaintiff is a candidate for NYC Mayor. He wishes to name the independent political body

whose nomination he seeks the "Independence Party," but provisions of NY Election Law ban

such a body from using the words "independent" or "independence" in its name. Because

this content-based restriction on core political speech violates Plaintiff's First Amendment rights,

he needs immediate injunctive relief so that he can print and circulate nominating petitions

using the Independence Party name when the petition circulation period begins on April 14, 2025.

MOVING PARTY: Jim Walden

OPPOSING PARTY: All Defendants-Appellees

- ☑ Plaintiff
- ☐ Defendant
- ☑ Appellant/Petitioner
- ☐ Appellee/Respondent

MOVING ATTORNEY: John R. Cuti

OPPOSING ATTORNEY: Stephen Kitzinger (for City BOE); Yuval Rubenstein (for State Board defendants)

[name of attorney, with firm, address, phone number and e-mail]

Cuti Frisch PLLC

40 Fulton St., 17th Fl., NY, NY 10038

212-285-8000  jcuti@cutifrisch.com

Mr. Kitzinger; Corporation Counsel of NYC, 100 Church Street, NY NY 10007

(212) 356-1000, Skitzing@law.nyc.gov; Mr. Rubenstein, Office of NY Attorney General,

28 Liberty Street, NY NY 10005, (212) 416-8673  yuval.rubinstein@ag.ny.gov

Court- Judge/ Agency appealed from: EDNY; District Judge LaShann DeArcy Hall

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1)?
- ☑ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
- ☐ Unopposed ☑ Opposed ☐ Don't Know

Does opposing counsel intend to file a response:
- ☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this court? ☐ Yes ☑ No

Requested return date and explanation of emergency: April 4, 2025

Because he seeks the nomination of an independent body -- as distinct from a recognized political Party --

Plaintiff must obtain thousands of valid signatures on nominating petitions.  The petitioning period begins on

April 15 and ends on May 27, 2025. Nominating petitions must include name of the independent body.

Plaintiff therefore must print petitions and train circulators before April 15.

Is the oral argument on motion requested? ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set? ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

_____ Date: April 2, 2025      Service : ☑ Electronic ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

JIM WALDEN,

Plaintiff,

v.

PETER S. KOSINSKI, as the Co-Chair of the New York State Board of Elections; HENRY T. BERGER, as the Co-Chair of the New York State Board of Elections; ESSMA BAGNUOLA, as a Commissioner of the New York State Board of Elections; ANTHONY J. CASALE, as a Commissioner of the New York State Board of Elections; KRISTEN ZEBROWSKI STAVISKY, as Co-Executive Director of the New York State Board of Elections; RAYMOND J. RILEY III, as Co-Executive Director of the New York State Board of Elections; and the NEW YORK CITY BOARD OF ELECTIONS,

Defendants.

No. 25-764

**EMERGENCY MOTION TO SET EXPEDITED BRIEFING SCHEDULE AND ORAL ARGUMENT**

Pursuant to 28 U.S.C. § 1657(a) and Second Circuit Local Rule 27.1, Plaintiff-Appellant respectfully requests that the Court immediately commence considering this appeal based on the papers filed in the District Court because the District Court has not yet issued an opinion regarding its order denying Plaintiff-Appellant's motion for a preliminary injunction in this case involving impending deadlines regarding the circulation of nominating petitions in Plaintiff-Appellant's campaign for Mayor of New York City.

In the alternative, Plaintiff-Appellant respectfully requests the following

expedited briefing schedule:

Appellant's brief to be filed by 5:00 p.m. on April 4, 2025.

Appellees' brief(s) to be filed by 5:00 p.m. on April 7, 2025.

Appellant's reply brief to be filed by 11:59 p.m. on April 7, 2025.

Appellant further requests that the Court schedule oral argument in this matter as soon as possible.

Defendant-Appellee New York City Board of Elections takes no position on this motion. The remainder of Defendants-Appellees – commissioners and officials of the New York State Board of Elections (collectively, the "State Board Defendants") – oppose this motion insofar as it asks this Court to proceed based on the briefing below and before the District Court issues an opinion. The State Board Defendants intend to file a response to this motion.

In support of this emergency motion to set an expedited schedule for briefing and oral argument, Plaintiff-Appellant states as follows:

1.     This appeal arises from Plaintiff-Appellant's as-applied First Amendment challenge to Sections 2-124(2) and 6-138(3) of the New York Election Law. As amended in 2022, Section 2-124(2) prohibits a recognized political "party" from using any form of the words "independent" or "independence" in its name. Section 6-138(3)(f) applies that prohibition to the

names of "independent bodies."[1]

2.      Plaintiff-Appellant is running for Mayor of New York City. He does not seek the nomination of an established party. Instead, he intends to circulate independent nominating petitions and become the nominee of an independent body. *See* N.Y. Elec. Law §§ 6-138, 6-140. Nominating petitions must include the name of the independent body whose nomination the candidate seeks. *Id*.

3.      As explained in his accompanying declaration, Plaintiff-Appellant wishes to name the independent body whose nomination he seeks the "Independence Party" because that name directly conveys his political message that he offers an alternative to the ways in which the established parties have conducted government. Unless New York's prohibition on the use of the words independent or independence (the "Independence Ban") is enjoined, Plaintiff-Appellant will be barred from doing so.

4.      Courts "shall expedite the consideration" of "any action for temporary or injunctive relief, or any other action if good cause therefor is shown." 28 U.S.C.

---

[1] A "party" is a "political organization which . . . at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected." N.Y. Elec. Law § 1-104 (3). An "independent body" is as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided." *Id*. at § 1-104(12). "Thus, there are political organizations that are commonly and correctly referred to as political parties that are not 'parties' within the meaning of New York law." *Green Party v. New York State Board of Election*, 267 F.Supp.2d 342, 344 (E.D.N.Y. 2003).

§ 1657(a). This action seeks preliminary injunctive relief, and good cause exists for this appeal to proceed before this Court on a highly expedited basis.

5. The period when candidates seeking the nomination of an independent body may begin to circulate nominating petitions is April 15, 2025. N.Y. Elec. Law § 6-138(4). No valid petition signatures may be obtained after May 27, 2025. *Id*. § 6-158(9).

6. Plaintiff-Appellant must print petitions, create signs and other political advertising materials, and train petition circulators regarding how to interact with potential petition-signers (including about how the Independence Party name reflects the candidate's political platform) before the petitioning period commences. *See* ECF Nos. 16, 20. He intends to circulate nominating petitions at the earliest possible moment because the first candidate to file nominating petitions has the exclusive right to use the name of the independent body listed on those petitions. *See* N.Y. Elec. Law § 6-138(3)(a).

7. On January 6, 2025, Plaintiff-Appellant filed a complaint seeking declaratory and injunctive relief. ECF No. 1. On January 10, 2025, counsel wrote to the District Court to propose a briefing schedule for a motion for preliminary injunction. ECF No. 10. A week later, the District Court approved the proposed briefing schedule. ECF Text Order dated January 17, 2025.

8. On January 15, 2025, Plaintiff-Appellant served his moving papers on

4

Defendants-Appellees.

9.      On January 31, 2025, the State Board Defendants served their opposition papers.  Also on January 31, 2025, Defendant-Appellant the New York City Board of Elections filed a letter requesting to be excused from participating in this litigation and taking no position on the merits. ECF No. 13.

10.      On February 7, 2025, Plaintiff-Appellant served his reply papers. Pursuant to the "bundling rule" often followed in the Eastern District of New York, Plaintiff-Appellant on that date also filed all of the motion papers. ECF No. 15.

11.      On March 4, 2025, counsel wrote to the District Court requesting oral argument at the earliest possible opportunity. ECF No.16. On March 11, 2025, the District Court ordered a hearing on the motion for preliminary injunction to be held on March 14, 2025.  ECF Text Order dated March 11, 2025.

12.      On March 14, 2025, the District Court conducted the hearing. There was no argument on the merits of the First Amendment claim. *See* Transcript of Proceedings (attached as Exhibit A to the accompanying declaration of John R. Cuti). Instead, the District Court elicited a representation from the State Board Defendants that they would not enforce the Independence Ban against Plaintiff-Appellant or require that the City Board of Elections do so. *See* ECF Text Order dated March 14, 2025. The Court pressed the City Board of Election to take a position on the merits. At the conclusion of the hearing, the District Court directed

the City Board of Elections to file a letter explaining its position by 2:00 p.m. on

March 17, 2025, and directed the parties to appear for a continued hearing on the

motion at 3:00 p.m. on March 18, 2025. *Id*.

13.    On March 17, 2025, the City Board of Elections filed a letter in which

it continued to state that it did not take a position on the merits, but that it would

adhere to the State Board Defendants' view that the Independence Ban applied to

candidates like Plaintiff-Appellant who sought to be nominated by an independent

body. ECF No. 18.

14.    On March 18, 2025, the District Court adjourned the hearing on the

preliminary injunction motion *sine die*. ECF Text Order dated March 18, 2025.

Later that morning, Plaintiff-Appellant filed a letter explaining that it was now

clear that Defendant-Appellee New York City Board of Elections would enforce

the Independence Ban against Plaintiff-Appellant, and that Plaintiff-Appellant

therefore required immediate injunctive relief to protect his First Amendment

rights. ECF No. 18.

15.    On March 31, 2025, Plaintiff-Appellant filed a letter noting that the

period for circulating petitions was to begin on April 15, 2025, and that Plaintiff-

Appellant needed to print petitions and take other steps before that date in order to

express his chosen political message. ECF No. 20.

16.    On April 1, 2025, the District Court entered a text order denying

Plaintiff-Appellant's motion for preliminary injunction. The Court did not issue an opinion; its text order noted that "Memorandum and Order to follow." ECF Text Order dated April 1, 2025.

17. On April 1, 2025, Plaintiff-Appellant filed a notice of appeal. ECF No. 21.

18. Plaintiff-Appellant would already have printed nominating petitions and political advertising materials using the Independence Party name but for New York's unconstitutional ban on the use of the words "independent" or "independence" in the name of an independent body. ECF Nos. 16, 20. He is chilled from doing so because Defendant-Appellee New York City Board of Elections – despite stating it takes no position (ECF No. 18) – has made clear it will enforce the Independence Ban against Plaintiff-Appellant. ECF No. 19. Accordingly, Plaintiff-Appellant respectfully requests that this Court decide this matter on the memoranda of law filed below, or in the alternative on the expedited briefing schedule proposed above, and after oral argument scheduled at the earliest practicable time.

Respectfully submitted,

/s_____
John R. Cuti
Cuti Frisch PLLC
40 Fulton St., 17th Fl.
New York, NY 10038
*Attorneys for Plaintiff-Appellant*

7

**Declaration of John R. Cuti**

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
-------------------------------------------------------------------------------

 JIM WALDEN,

                                    Plaintiff,

     v.

PETER S. KOSINSKI, as the Co-Chair of the New
York State Board of Elections; HENRY T.
BERGER, as the Co-Chair of the New York State                    No. 25-764
Board of Elections; ESSMA BAGNUOLA, as a
Commissioner of the New York State Board of
Elections; ANTHONY J. CASALE, as a
Commissioner of the New York State Board of
Elections; KRISTEN ZEBROWSKI STAVISKY, as
Co-Executive Director of the New York State Board
of Elections; RAYMOND J. RILEY III, as Co-
Executive Director of the New York State Board of
Elections; and the NEW YORK CITY BOARD OF
ELECTIONS,

                                    Defendants.

-------------------------------------------------------------------------------

## DECLARATION OF JOHN R. CUTI IN SUPPORT OF EMERGENCY MOTION FOR EXPEDITED APPEAL

   John R. Cuti, Esq., hereby declares under penalty of perjury, under 28

U.S.C. § 1746, that the following is true and correct:

   1.    I am a member of Cuti Frisch PLLC, counsel for Plaintiff-Appellant

Jim Walden. I submit this declaration to support the foregoing emergency motion

for expedited consideration and determination of Plaintiff-Appellant's appeal from

the District Court's denial of his motion for a preliminary injunction.

   2.    The statements and citations to the District Court docket in the

foregoing motion are accurate. This emergency motion was ready to be filed

tonight (April 2, 2025), but no appellate docket number had yet been assigned by the close of the Court's business.

3. Attached as Exhibit A to this declaration is a certified transcript of the hearing on the motion for a preliminary injunction conducted by District Judge DeArcy Hall on March 14, 2025.

4. Before that hearing, counsel for the State Board Defendants and I agreed that the declarations each side had submitted in support of and in opposition to the motion – *i.e.*, ECF Nos. 15-2, 15-3, 15-4, 15-6, 15-8, and 15-9 – would be entered into the record of the hearing, without need of calling any witnesses.

5. As review of the papers below demonstrates, there are no factual disputes between the parties.

6. Plaintiff-Appellant's legal arguments below were set forth in his opening memorandum of law, ECF No. 15-1, and his reply memorandum of law, ECF No. 15-7. The legal arguments of the State Board Defendants-Appellees below were set forth in their memorandum of law in opposition to the motion, ECF No. 15-5. Defendant-Appellee New York City Board of Elections did not file any papers in opposition to the motion. *See* Ex. A at 11; *see also* ECF No. 13.

7. I respectfully request that the Court address and decide this appeal by considering the papers filed in the District Court and hearing oral argument at the earliest time practicable. (Although those papers of course do not address the

standard of review on appeal, that familiar standard is set forth in Addendum B to Form C filed together with these motion papers.) In the alternative, I respectfully request that the Court order the alternative briefing schedule proposed in this emergency motion and then hear oral argument as soon as the Court can do so.

Respectfully,

John R. Cuti

Dated:     April 2, 2025
           New York, New York

**Exhibit A to Declaration of John R. Cuti**

**Transcript of March 14, 2025**
**Hearing on Motion for Preliminary Injunction**

1

1           UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
2

3   ------------------------------x
                                    25-CV-00072(LDH)
    JIM WALDEN,
4                                   United States Courthouse
            Plaintiff,             Brooklyn, New York
5
            – versus –             March 14, 2025
6                                   2:00 p.m.
    PETER S. KOSINSKI, HENRY T.
7   BERGER, ESSMA BAGNUOLA,
    ANTHONY J. CASALE, KRISTEN
8   ZEBROWSKI STRAVISKY, RAYMOND
    J. RILEY and NEW YORK CITY
9   BOARD OF ELECTIONS,

10          Defendants.

11  ------------------------------x

12   TRANSCRIPT OF CIVIL CAUSE FOR PRELIMINARY INJUNCTION HEARING
            BEFORE THE HONORABLE LaSHANN DeARCY HALL
13               UNITED STATES DISTRICT JUDGE

14
    APPEARANCES
15
    Attorney for Plaintiff:  CUTI FRISCH PLLC
16                           40 Fulton Street, 17th Floor
                             New York, New York 10038
17                           BY:  JOHN R. CUTI, ESQ.

18  Attorney for Defendants: NEW YORK STATE
    Peter S. Kosinski,       OFFICE OF THE ATTORNEY GENERAL
19  Henry T. Berger,         28 Liberty Street
    Essma Bagnuola,          New York, New York 10005
20  Anthony J. Casale,       BY:  YUVAL RUBINSTEIN, ESQ.
    Kristen Zebrowski
21  Stravisky, and
    Raymond J. Riley
22
    Attorney for Defendant:  BOARD OF ELECTIONS
23  New York City            IN THE CITY OF NEW YORK
    Board of Elections       32 Broadway, Suite 7th Floor
24                           New York, New York 10004
                             BY:  RAPHAEL E. SAVINO, ESQ.
25
    Also Present:            JIM WALDEN, PLAINTIFF

*Court Reporter: AVERY N. ARMSTRONG, RPR*
*Email: Aarm.edny@gmail.com | (718)613-2419*
*Proceedings recorded by mechanical stenography.  Transcript*
*produced by computer-aided transcription.*

PROCEEDINGS                    2

1          (In open court.)

2          THE COURTROOM DEPUTY:  Good afternoon.  This is a

3    civil cause for a preliminary injunction hearing, in the

4    matter of *Walden versus Kosinski et al.*, docket number,

5    25-CV-72.

6          Counsel please, state your appearance for the

7    record, starting with the plaintiff.

8          MR. CUTI:  For the plaintiff, John Cuti from Cuti

9    Frisch, PLLC.

10          THE COURT:  Good afternoon.

11          MR. CUTI:  Good afternoon, Your Honor.

12          MR. RUBINSTEIN:  Good afternoon, Your Honor.

13          Yuval Rubinstein, Office of the New York State

14    Attorney General on behalf of the State defendants in this

15    action.

16          Good afternoon.

17          THE COURT:  Good afternoon.

18          MR. SAVINO:  Good afternoon, Your Honor.

19          Raphael Savino with the Board of Elections and the

20    City of New York.  I'm deputy general counsel.

21          THE COURT:  Excellent.  All right.  You all can be

22    seated.  Afternoon, Jim.

23          So before we get started, I think it's important for

24    me to disclose to all the parties here that Mr. Walden and I

25    used to be colleagues when I served as an associate a long

PROCEEDINGS                          3

1   time ago at the law firm of Gibson Dunn & Crutcher.  It is

2   evident from the gray on both my head and Jim Walden's head

3   that it was some time ago.  It is, of course, not a basis for

4   the Court to recuse itself, but nonetheless, I thought it was

5   important that I let you all know that, in fact, we used to be

6   colleagues.

7           Is there anything that anyone wants to say about

8   that before we proceed?

9           Good stuff.  All right, folks.  Okay.

10          So I'm really pragmatic in my approach to cases as a

11  general matter.  And so I want to start by saying just for the

12  purposes of this hearing, let's assume that I have prepared a

13  memorandum and order which would dismiss the State defendants

14  from this case.  I have not issued that order, you've not seen

15  it, but let's assume that for the sake of argument.  What I've

16  received from the City, which I found interesting -- and

17  that's not really how I found it -- but a letter from the City

18  indicating that the City has taken no position on this

19  litigation, and that it would be bound by the determination of

20  this Court.

21          MR. RUBINSTEIN:  Board of Elections, Your Honor.

22          THE COURT:  Excuse me.  Board of Elections.

23          But again, for the purposes of this hearing, let's

24  assume that the State is no longer a party to this action.

25  That leaves the -- this New York City Board of Elections, and

PROCEEDINGS                                    4

1    you have to -- well, I'll say fish or cut bait.

2             So you all are going to have to engage here.  What

3    you've told me is that you don't take a position.  What

4    Mr. Walden told me in his submission is that if the parties

5    were to recognize or acknowledge that, in fact, the statute --

6    one of the statutes at issue -- but the one that is the most

7    troublesome did not apply to independent bodies, then, indeed,

8    the matter would be moot.

9             That's a fair statement -- I'm sorry, I'm not

10   talking to Jim at this point -- Mr. Cuti?

11            MR. CUTI:  Yes, it is.

12            THE COURT:  If the New York City Board of Elections

13   takes no position whatsoever, if the State is out of this

14   case, if we've assumed that, what are we doing here?

15            On its face, there is no question, the State, in its

16   submission in its papers, acknowledges that, on its face, that

17   the statute, 2-124 -- Sera give it to me.

18            THE CLERK:  2-124.

19            THE COURT:  Oh, I did have it right.  2-124, on its

20   face, applies to parties, doesn't apply to independent bodies.

21            What are we doing?  You can stand.

22            MR. SAVINO:  Naturally, Your Honor, we would follow

23   whatever Court direction there was.

24            THE COURT:  No, but what's the controversy here?

25            If the State is gone, you all don't care either way,

```
                          PROCEEDINGS                    5
```

1   I've got 500 cases on my docket on the civil side.  What are

2   we doing here?  Why don't you resolve this case?  Why is this

3   not simply settled?

4           MR. SAVINO:  I'm not sure I'm following Your Honor

5   in terms of settlement with the Board of Elections.

6           THE COURT:  Just, we agree, we will concede.

7   Section 2-124 does not apply to independent bodies, the State

8   has said -- well, assuming the State is out, but in any event,

9   the State has also said, we would not enforce our position on

10  the City, and certainly, if the State were later to do so, I,

11  obviously, would take a different position with regard to the

12  State's position.  And that would trigger a different analysis

13  here.  We're not there yet and we don't need to get there.

14          Right now, where we are at is the New York City

15  board has told me, we don't care one way or the other.  So why

16  are we litigating anything?  Simply, resolve the case.

17          Yes.

18          MR. CUTI:  I hate to start by highlighting a mistake

19  that I made.  But our -- Section 6-138, which is the statute

20  that governs the names of independent bodies --

21          THE COURT:  Does not -- 6-138 does not have the

22  prohibition with respect to the naming of the use of the name

23  independent body.

24          MR. CUTI:  6-138 Subdivision A does not.

25  Unfortunately, as I learned before I submitted my reply

PROCEEDINGS                           6

1   papers --

2              THE COURT:  Before you submitted?

3              MR. CUTI:  Yes.  And it's in the reply.

4              THE COURT:  The last two sentences in subsection, I

5   think you're referring to --

6              MR. CUTI:  F.

7              THE COURT:  The last two sentences at subsection --

8   give me a second, I've got to find it.

9              Sera, show me where is it here?  What tab should I

10  be looking at for 6-138?  Give me a second, folks.

11             (Pause in the proceedings.)

12             THE COURT:  Give me a second folks.  I seem to be

13  missing my printout of that statute.  I'm going to print it

14  right now.

15             MR. CUTI:  I'm holding a copy in my hand,  Your

16  Honor.  May I approach your directly?

17             THE COURT:  Yes.  Thank you.

18             MR. CUTI:  It's Subdivision F on the second page.

19             THE COURT:  The last sentence which reads, The name

20  and emblem shown on such petition or selected by a candidate

21  authorized to make such selection by paragraph B.

22             And paragraph B, if I'm correct, is triggered when

23  an independent body has chosen its name that is the same,

24  right, as either a party or an existing independent body, in

25  which case, as a matter of fact, there isn't going to be a

PROCEEDINGS                    7

1    party with the name independent party because that is

2    proscribed by Section 2-124, and currently, there isn't

3    another independent body that carries the name Independence

4    Party.  Hence, there is no basis, in fact, for the last

5    sentence of 6-138 to be triggered.

6          MR. CUTI:  I went through very much same exact

7    analysis for my opening papers, and I went very deep into the

8    legislative history, and --

9          THE COURT:  You know what, I want to stop you,

10   because at the end of the day, if the State is gone, if the

11   City agrees not to enforce 6-138 against Mr. Walden's

12   petition -- excuse me, to interpret 6-138 to somehow trigger

13   2-124, we're done.

14         MR. CUTI:  Here's my concern:  Your Honor rules for

15   us or based on a default or an agreement, and then the

16   nominating petitions go out with the Independence Party name

17   on them, Mr. Walden collects an adequate number of signatures,

18   he attains the right to be on the ballot, and then the State

19   board comes in and says, Well, sorry, we're not going to print

20   those ballots because 2-124 Sub 2 does apply to independent

21   bodies --

22         THE COURT:  The State would be inviting an

23   immediate -- an immediate -- injunction by this Court.  The

24   State has made a representation to this Court in no uncertain

25   terms that it does not intend to do that.  It has, in no

PROCEEDINGS                                    8

1  uncertain terms.  And at the end of the day, you can look at

2  that with some suspicion, but I am telling you that I have

3  said that the State has represented to this Court that it

4  would not do that.  It would invite an immediate injunction.

5  I'm not concerned that the State is going to take an action

6  that is inconsistent with any representation that it made to

7  me.

8            MR. RUBINSTEIN:  If the State's willing to confirm

9  Your Honor's understanding, then I agree with Your Honor.

10           THE COURT:  Oh, they will, I promise you, before we

11  done today.  I need to get back to the City, because right

12  now, the City, as a party, is our issue.  I want to get this

13  resolved.  I want this done today, folks.  I only deal with

14  controversies, and I don't see that we have one.

15           You all don't take a position, either way.

16           MR. SAVINO:  Well, this is based on the authority

17  I've been given from the Commissioner's.  They've indicated

18  that they're, again, taking no position.

19           THE COURT:  Taking no position in this case, right,

20  means that you all resolved this case with Mr. Walden and say,

21  move forward and onward because the City is not going to be

22  in this case.  So it's a little confusing notion what you all

23  wrote in your papers to me, right.  We don't want to take a

24  position, we don't want to participate anymore.  Well, guess

25  what, you're a named defendant.  And I do not have the same

*AVERY N. ARMSTRONG, RPR, NYRCR*
*OFFICIAL COURT REPORTER*

PROCEEDINGS                                    9

1    concerns about standing with the New York City board that I

2    find with the State.

3              Now, certainly, were the State to act in a manner

4    inconsistent with its representations to me, then my view of

5    standing would be different.  But as we sit here today,

6    there's a standing issue.  But there doesn't seem to be a

7    controversy with the City.

8              What is your position that is contrary to

9    Mr. Walden's?

10             MR. SAVINO:  Currently, the statute's in effect, and

11   we would follow the --

12             THE COURT:  Which statute, sir?

13             MR. SAVINO:  The barring of the Independence Party.

14             THE COURT:  The barring of the Independence Party

15   under 2-124, on its face, is limited to political parties, not

16   independent bodies.  Are you now taking a position?  And if

17   you have a position, articulate it.  And if you don't have a

18   position, settle this case.

19             What's your position?

20             MR. SAVINO:  We're not taking a position, Your

21   Honor.

22             THE COURT:  Then settle the case.  There's no

23   controversy then.  I resolve controversy.  You have no

24   position; what am I resolving?  If you all submitted papers,

25   what are you going to say?  I resolve controversies.

PROCEEDINGS                    10

1          Is there anybody else that needs to come here and

2    stand into this courtroom and tell me what the controversy is?

3    because it is not my job to simply allow the City board to

4    just decide they don't want to participate in this process

5    somehow and put it on the Court.

6          What's the controversy?  Identify the controversy

7    for me if have you no position.

8          MR. SAVINO:  Again, Your Honor, the board is not --

9    I'm not authorized to --

10          THE COURT:  You're not authorized to what?

11          MR. SAVINO:  Other than that the board is not taking

12    a position, the authorization from the Commissioner's --

13          THE COURT:  Okay.  We're going to do this again.

14    We're coming together again on Tuesday.

15          Who is it that has authority?

16          MR. SAVINO:  The board and 10 commissioners.

17          THE COURT:  To resolve this case?

18          This right now, is litigation.  There is someone

19    that has the authority to resolve this case.  Who is it?  And

20    they need to be here on Tuesday.  We're going to come back

21    here again.  I'm not waisting my time with a non-controversy.

22    It makes no sense.  Your position takes no sense.  You have to

23    take a position.  You are named as a defendant.  That's the

24    way it works.

25          MR. SAVINO:  I can certainly speak to the

```
                         PROCEEDINGS              11
```

1    Commissioners and get further guidance, Your Honor.

2              THE COURT:  No, you will somebody here on Tuesday,

3    because we're going to do this again on Tuesday, and we're

4    going to figure out where this case is.

5              You don't get to not take a position.  If somebody

6    sues you either say, you know what, they're right or they're

7    wrong for this reason.  You don't just get to say, you know

8    what, we don't want to play.

9              So who is it that's going to come on Tuesday?

10             MR. SAVINO:  I'll have to discuss that with the

11   office.

12             THE COURT:  What time on Tuesday, Cat?

13             Yes?

14             MR. CUTI:  I'm sorry, Your Honor.  And I appreciate

15   what you're doing.  But I have just a couple of things to say.

16             First of all, I share your frustration.  My view is

17   when a party that's been named and served doesn't oppose a

18   motion, they consent to the relief requested, and I don't

19   think they need to --

20             THE COURT:  But it's not as simple as that.  If I

21   don't are resolve this through a settlement, right, it is a

22   different calculus.  I will go through and have to make a

23   decision about all of the merits of it, et cetera, and it's

24   far more involved than I think is necessary, given the fact

25   that the City doesn't seem to oppose.

PROCEEDINGS                    12

1      I am not going to waste the resources of this Court

2  for a non-controversy.

3      MR. CUTI:  Here's a related concern though, Your

4  Honor, is that the State board's papers, particularly, the

5  declaration of one of the Commissioner's of the State board is

6  very clear, a little cagey, but very clear, that they're going

7  to enforce this against Mr. Walden.  They say, oh, we don't

8  enforce this against the City board, hint hint.

9      THE COURT:  What's the mechanism -- I'm just curious

10 what you think that mechanism would be, because let's break

11 this down.

12      If, in fact, Mr. Walden got a determination with

13 respect to the petition, right, that he was dissatisfied with,

14 the mechanism there would be to go to the Supreme Court.

15 That's what the statute says.  If somehow the State sought to

16 enforce 2-124 against Mr. Walden, right, then they would

17 somehow have to convince me that 2-124 applies to independent

18 bodies, notwithstanding the fact that on its face, it only

19 applies to parties.  I'm not concerned.  I don't share your

20 concern.

21      MR. CUTI:  But, Your Honor, as an officer of the

22 Court, I read the statute the same way.  But having looked

23 very carefully at the legislative history, it really does

24 apply.  It's not what I thought, but when they amended it in

25 '92, there used to be no subdivisions.  It used to just say,

PROCEEDINGS                          13

1    and by the way, it applies, the rules that apply --

2              THE COURT:  So you're suggesting that I have to --

3    that I am to ignore, right, because the starting point for

4    statutory interpretation is what?

5              MR. CUTI:  The plain language --

6              THE COURT:  Exactly.  So I get to make a

7    determination as a matter of law based on the plain language

8    of the statute.  And you want to convince me that my

9    interpretation of the plain language of the statute is

10   incorrect because of your reading of the legislative history.

11             I don't know, did you switch teams?

12             MR. CUTI:  No, Your Honor.  But my concern is that,

13   is that the State will come in and say, oh, well, you know,

14   the City --

15             THE COURT:  But they don't decide, I do, and I've

16   already told you what I think.  They don't decide.

17             MR. CUTI:  I would like for you to get --

18             THE COURT:  I know what you want.

19             MR. CUTI:  -- a statement on the record from them.

20             THE COURT:  I already know what you want.  I told

21   you we were going to get there.  I told you the hurled right

22   now is the City.  I'm not as concerned about the State as you

23   are.  I have the authority to ensure that the State acts

24   consistent with its representations to me.

25             I mean, look, you've had five minutes with me.  You

PROCEEDINGS                                    14

1    don't know me.  You don't a long history with me.  But I've

2    got to tell you, in the few minutes that you've had an

3    opportunity to be before me, do you really think that I'm

4    going to allow the State to play games here?

5             MR. CUTI:  Here's -- I don't.

6             THE COURT:  Wait.  Hold on.  Mr. Walden is trying to

7    get your attention.  I'm going to give you a minute.

8             (Pause in the proceedings.)

9             MR. CUTI:  Now, I have two frustrated people, Court

10   and my client.  But I just have to make a record.

11            The problem is that if Mr. Walden circulates the

12   petitions with the Independence Party name on them and the

13   City accepts them, right --

14            THE COURT:  The State.  Hold on.  Stop.

15            Mr. Rubinstein, you've made a representation to this

16   Court at page -- Sera, what page am I at for the states

17   papers?  It's one of my flags.  What page am I at?

18            At the top of Page 8 of the State's submission you

19   write, although the State BOE does have a position regarding

20   the applicability of Section 124 on the independent nominating

21   petitions -- I can only assume, based on that, that your

22   position is as Mr. Cuti is suggesting, contrary, at least, to

23   what Mr. Cuti once believed.  You indicate that the State BOE

24   does not enforce that position against local Boards of

25   Election.

PROCEEDINGS                    15

1          Is it fair for the Court to interpret that statement

2    to mean that you do not intend to enforce your reading of

3    Section 2--- excuse me, Section 6-138 and 2-124 with respect

4    to Mr. Walden's petition?  Is it correct?

5          MR. RUBINSTEIN:  That is my understanding, and I

6    would refer Your Honor to --

7          THE COURT:  No, no.  Not your understanding.

8          I'm asking you about what you said to me.  I am

9    asking for the direct representation that Mr. Cuti so

10   desperately wants you to make.  And if you refuse to make

11   that, then it's going to give me some pause, and pause that

12   you're not going to like, because then I would believe that

13   you all were trying to play fast and loose with the submission

14   that you gave to me.

15          MR. RUBINSTEIN:  I can make that representation,

16   Your Honor, yes.

17          THE COURT:  Say it again.  Say what the

18   representation is.

19          MR. RUBINSTEIN:  That as per Page 8 and Your Honor's

20   comment, that the interpretation of the State board regarding

21   the applicability of Section 2 124 as to 6 138 will not be

22   enforced as against local Boards of Election, and also as

23   against to Mr. Walden's candidacy.  I would also refer Your

24   Honor to paragraph 17 of the last paragraph of the Stravisky

25   declaration.  Again, she explicates further, the

PROCEEDINGS                    16

1   noninvolvement, I should say, of the State Board of Elections

2   in this process.

3              THE COURT:  Yes.  Okay.  You got your

4   representation.

5              MR. RUBINSTEIN:  Here's my concern, Your Honor, and

6   the only reason I raise it is because if Mr. Walden then

7   doesn't get on the ballot at all because they're playing a

8   game --

9              THE COURT:  They just made a representation to me.

10             MR. CUTI:  They made a very carefully worded

11  representation.

12             THE COURT:  Not just now.  They don't intend to

13  enforce it against local boards, including Mr. Walden.

14             MR. CUTI:  But will they enforce 2-124 2 when it

15  comes time to print Mr. Walden's name on the ballot as the

16  candidate of the Independence Party?  They believe that --

17             THE COURT:  Will they enforce 2-12 -- what's your

18  question again?  Because right now, the question that is

19  before this Court is whether this provision will be enforced

20  against Mr. Walden as he seeks, right, to be placed -- to have

21  this petition and a nomination for an independent body.

22             If are you talking about something beyond that,

23  that's not before me.

24             MR. CUTI:  If Your Honor can look at the declaration

25  of Commissioner Stravisky at paragraph four.  It's document

PROCEEDINGS                    17

1    156, Page 3 of 28.

2            THE COURT:  Yes.  And you're concerned about that

3    last sentence?

4            MR. CUTI:  It explicitly says --

5            THE COURT:  But what I have is a current

6    representation, today, that they are not going to seek to

7    enforce any interpretation or 6-138, against -- or 2-124, to

8    interpret 6-138 to prohibit Mr. Walden from using an

9    independent party for the purposes of his petition as it

10   relates to him as an independent body.  They've made that

11   representation today.  And if they did, if they did seek to do

12   that, right, as I've said, I have recourse.  And if you think

13   I wouldn't shut that down, based on the representations that

14   that with were made here today, as well as the fact that the

15   plain reading of the statute, the plain reading of the statute

16   which is the starting point for any Court's interpretation,

17   says 2-124 does not apply to Mr. Walden.  And it seems like

18   your concern suggests that you don't think that I have the

19   authority to make the final determination.

20           MR. CUTI:  I'm concerned that the representation is

21   about what the State board would do vis-à-vis the City board's

22   determination about the nominating petitions.

23           THE COURT:  Versus -- the nominating petition is

24   what is at issue here.

25           MR. CUTI:  Right.  But then once you submit enough

PROCEEDINGS                    18

1   valid petitions --

2              THE COURT:  But I'm not there.

3              MR. CUTI:  -- they have to put you on the ballot.

4              THE COURT:  I'm not here to resolve any and every

5   different kind of change that may evolve as this process

6   unfolds.  I'm here to resolve, right, the question presented

7   to me today.  And so the arguments that you're making,

8   understand, certainly would lend credibility to any argument

9   that the State is making that what you're talking about is

10  completely speculative and hypothetical.

11             What I'm telling you as I'm ready to resolve the

12  dispute you put before me now.  If there's a future dispute

13  that becomes ripes, then I'll address the future dispute that

14  becomes ripe.  What I'm trying to get you is a W on the

15  dispute you have today.

16             Yes?

17             MR. CUTI:  I feel very -- and I know I'm frustrating

18  my client, and I am, in part, trying to make a record, because

19  I know what Your Honor is doing.  But one of the reasons why I

20  think the case --

21             THE COURT:  This is what we're going to do:  Take a

22  break.  We're taking 15 minutes.  We'll be back.  You all talk

23  this out.  I want this case resolved, folks.

24             THE COURTROOM DEPUTY:  All rise.

25             (A recess was taken.)

PROCEEDINGS                    19

1        THE COURT:  You all can be seated.  I hope we had a

2   productive 15 minutes.

3        Mr. Cuti.

4        MR. CUTI:  I don't believe we did, unfortunately.  I

5   tried to get a representation from counsel for both the State

6   and the City boards.

7        THE COURT:  Well, you weren't going to get anything

8   from the City just yet because I couldn't get anything from

9   the City, and I think they were going to respond to me before

10  they responded to you.  We're going to convene on Tuesday.

11       MR. CUTI:  And I could not get a representation from

12  the Attorney General's Office about the State board later

13  taking the position that 2-124 --

14       THE COURT:  Later when?  I don't know what the later

15  means.

16       MR. CUTI:  After the petitions are accepted, but

17  before the general election ballot is printed the State board

18  can say, we're not printing that name on the ballot because an

19  independent body can't use the word independence in its name.

20       THE COURT:  Which would fly in the face of the

21  representations that were made to me today.  Yes.

22       No, yes.

23       MR. RUBINSTEIN:  Your Honor, I just conferred with

24  Mr. Savino on that issue, and he confirmed -- it was not in

25  the papers, but he confirmed that the City is the party that

PROCEEDINGS                    20

1   print outs the ballots, and I can represent that to Your

2   Honor.  Even though it was not presented for decision, I can

3   make that representation based on my discussions with Mr.

4   Savino.

5           THE COURT:  You're saying that the State does not

6   play a role in the printing of the document that Mr. Cuti has

7   concern with?

8           MR. RUBINSTEIN:  That is what I was informed by, and

9   based on my discussion.

10          MR. SAVINO:  That is correct, Your Honor.

11          THE COURT:  So you're also confirming that there's

12  no role by the State in that aspect of the process, as well?

13          MR. RUBINSTEIN:  That is my understanding, based on

14  discussion --

15          MR. SAVINO:  That is correct.  Although they do

16  often issue guidance.

17          THE COURT:  But regardless, I have a representation

18  that was made to me.  I guess I'm so thoroughly confused

19  because I've never had a lawyer tell me, Judge, we don't

20  believe that they're going to follow the rules or the guidance

21  of the Court or the agreement or representations that they've

22  made before the Court.

23          I mean, if I couldn't resolve cases because we think

24  that the parties are going to play backsies, then I could

25  never get anything done.

PROCEEDINGS                                    21

1          MR. CUTI:  I agree with Your Honor.  And based on

2     that representation, that the State board is not going to come

3     in and tell the City board, sorry, we're stepping in because

4     we have the ultimate power, I agree with Your Honor.  And it

5     seems like we have a resolution that the Independence Party is

6     going to be filing the petition subject to Mr. Savino coming

7     back here on Tuesday and saying he changed his mind.

8          THE COURT:  You have finally arrived where I

9     started.

10         MR. CUTI:  It takes me a while, Your Honor.

11         THE COURT:  That's all right.

12         We're not going to have any issue with the State on

13    this.  The issue that we have right now is the City board --

14    the New York City Board of Elections, the initial problem is

15    their unwillingness to take a position.  That's not going to

16    happen.  By Monday, you all are going to submit to me whatever

17    position you all are intending to take on this issue.  My

18    preference would be, and you would think that the New York

19    City board would prefer to resolve since, as you already said,

20    you don't really take a position.  So it seems to me, at least

21    as I sit here right now, there is no dispute.

22         You're going to give me something on Monday, and

23    then if I assess that there's actually some dispute -- but,

24    again, that would run contrary to multiple representations

25    that the City has made to me.  In fact, they said look we

PROCEEDINGS                    22

1   don't even want to play ball here.  So my exception is that

2   there should be no problem.  And that if there is a problem,

3   again, someone's going to have to answer to that fact that

4   clearly you had a position all along.  And that would be a

5   misrepresentation that would have been made to the Court

6   multiple times.  So I suspect we're not going to have a

7   problem come Tuesday.  But let's see where we are come

8   Tuesday.

9            Monday, by 2:00 o'clock, I want the New York City

10  board's position on this issue.

11           Tuesday, at 3:00 o'clock, the City board and the

12  plaintiff will convene here.  You all can anticipate that I

13  will issue an order which would not require the State to be

14  present.  And you should let whomever it is at the New York

15  City board know that I want this resolved come Tuesday.

16  There's no real controversy, as I can see it.  What I can see

17  is that the New York City board is wasting my time.  I don't

18  take kindly to that.

19           Are there any questions, folks?

20           MR. SAVINO:  No, Your Honor.

21           THE COURT:  All right.  2:00 o'clock -- what did I

22  say, Cat?

23           (Judge confers with the courtroom deputy.)

24           THE COURT:  Monday at 2:00 for the submission by the

25  New York City board, Tuesday at 3:00 for the parties to come

```
                        PROCEEDINGS                    23

 1   here with the exception that we will resolve this matter.

 2             That's all I've got for you all.

 3             MR. CUTI:  Thank you, Your Honor.

 4             THE COURT:  Thank you.

 5             MR. RUBINSTEIN:  Thank you, Your Honor.

 6             MR. SAVINO:  Thank you.

 7             THE COURT:  Thank you.

 8

 9             (Whereupon, the matter was concluded.)

10

11                    *    *    *    *    *

12

13

14   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

15

16     s/ Avery N. Armstrong              March 14, 2025

17       AVERY N. ARMSTRONG               DATE

18

19

20

21

22

23

24

25
```

**Declaration of Jim Walden**

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

JIM WALDEN,

                            Plaintiff,

    v.

PETER S. KOSINSKI, as the Co-Chair of the New
York State Board of Elections; HENRY T.
BERGER, as the Co-Chair of the New York State
Board of Elections; ESSMA BAGNUOLA, as a
Commissioner of the New York State Board of
Elections; ANTHONY J. CASALE, as a
Commissioner of the New York State Board of
Elections; KRISTEN ZEBROWSKI STAVISKY, as
Co-Executive Director of the New York State Board
of Elections; RAYMOND J. RILEY III, as Co-
Executive Director of the New York State Board of
Elections; and the NEW YORK CITY BOARD OF
ELECTIONS,

                            Defendants.

No. 25-

---

## DECLARATION OF JIM WALDEN IN SUPPORT OF EMERGENCY MOTION FOR EXPEDITED APPEAL

Jim Walden, Esq., hereby declares under penalty of perjury, under 28 U.S.C.

§ 1746, that the following is true and correct:

    1.    I submit this declaration to support the foregoing emergency motion

for expedited consideration and determination of my appeal from the District

Court's denial of my application for an order preliminarily enjoining Defendants-

Appellees from enforcing a content-based restriction on core political speech that,

as applied to me and my campaign, violates the First Amendment.

    2.    I announced that I was running to become the next Mayor of the City

of New York on October 24, 2024. I have not been enrolled in any political party, including the Democratic Party or the Republican Party (collectively, the "Major Parties"), since 2006. In this campaign, the core political message that my supporters and I wish to express is independence from the Major Parties and the way they historically have conducted government in New York.

3. I intend to seek the nomination of what the New York election law calls an "independent body" by obtaining signatures from registered voters in New York City on what are called "nominating petitions." *See* N.Y. Elec. Law § 6-138 *et seq*.

4. Since the campaign began, I have planned to name this new independent body the "Independence Party" because that name directly reflects the political message that my supporters and I want to express. Because in 2022, the New York legislature amended Section 2-124(2) of the Election Law to ban any political party from using any form of the words "independence" or "independent" in its name, and because I feared that Defendants-Appellees would enforce this ban against me to prevent me from naming an independent body the "Independence Party," I filed suit on January 6, 2025, seeking a declaratory judgment and injunction providing that New York's law prohibiting a political organization from naming itself the "Independence Party" was unconstitutional.

5. I moved for a preliminary injunction because the credible threat that

2

some or all of the Defendants-Appellees would enforce this prohibition against my campaign actively chilled my First Amendment rights. After reading the letter filed by the New York City Board of Elections on March 17, 2025 (ECF No. 18), it became clear that there was a certainty that this ban would be enforced against me. *See* ECF No. 19.

6.     Throughout this litigation, we have pressed for a decision because this threat of enforcement was preventing my campaign from printing nominating petitions using a name – Independence Party – that directly expresses my political message, from training those who have volunteered to circulate petitions on my behalf about how to communicate with potential petition-signers about how that name embodies my political platform, and from creating and producing political advertising materials using the Independence name. *See* ECF Nos. 16, 19, 20.

7.     A day after my counsel's most recent letter, the District Court denied the motion for a preliminary injunction without issuing an opinion. *See* ECF Text Order dated April 1, 2025.

8.     My campaign has long planned to begin circulating petitions on the earliest possible date – April 15, 2025 – because if another candidate submits petitions using the Independence Party name before I do, that candidate will have the exclusive right to the name.

9.     In order to circulate petitions by that date, my campaign first needs to

print nominating petitions using the name of the independent body whose nomination I seek. I had delayed printing petitions using the Independence Party name while awaiting a decision; I also had to refrain from printing and distributing political advertising materials using that name. I continue to refrain from printing petitions and advertising materials, and from training petition circulators, because the District Court has denied my request for an order preliminarily enjoining Defendants-Appellees from enforcing the Independence Ban against me. I filed this appeal in the hope that this Court will reverse the order below and enjoin Defendants-Appellees from enforcing this ban against me.

10.     But soon I will have to abandon my long-held plans to express my political message by using the word Independence and instead choose a different, and to my mind less effective, name because the petitioning period begins in less than two weeks and there is an enormous amount of preparatory work that must occur before petition circulators hit the streets to interact with potential voters.

11.     That is why I respectfully request that this Court grant this motion for expedited consideration of this appeal. Because the District Court has not issued an opinion, I respectfully submit that this Court should rely on the submissions below to prepare for oral argument.

12.     There are no factual disputes. The dispute is purely legal: can New York prevent an independent candidate for office from sending circulators into the

4

field to seek to persuade voters to sign nominating petitions that identify my independent political organization as the "Independence Party"? In other words, does New York have any legitimate interest that could justify a content-based restriction on core political speech?

13. I respectfully request that the Court address and decide that issue by considering the papers filed in the District Court and hearing oral argument at the earliest time practicable. In the alternative, I respectfully request that the Court order the alternative briefing schedule proposed in this emergency motion and then hear oral argument as soon as the Court can do so.

Respectfully Submitted,

Jim Walden

Dated:      April 2, 2025
            New York, New York

UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
------------------------------------------------------------------------

JIM WALDEN,

                         Plaintiff,

        v.

PETER S. KOSINSKI, as the Co-Chair of the New
York State Board of Elections; HENRY T.
BERGER, as the Co-Chair of the New York State          No. 25-764
Board of Elections; ESSMA BAGNUOLA, as a
Commissioner of the New York State Board of
Elections; ANTHONY J. CASALE, as a
Commissioner of the New York State Board of
Elections; KRISTEN ZEBROWSKI STAVISKY, as
Co-Executive Director of the New York State Board
of Elections; RAYMOND J. RILEY III, as Co-
Executive Director of the New York State Board of
Elections; and the NEW YORK CITY BOARD OF
ELECTIONS,

                         Defendants.

------------------------------------------------------------------------


# MEMORANDUM OF LAW IN SUPPORT OF
# EMERGENCY MOTION FOR EXPEDITED APPEAL


John R. Cuti
Cuti Frisch PLLC
40 Fulton St., 17 Fl.
New York, NY 10038
*Counsel for Plaintiff-Appellant*

Plaintiff-Appellant respectfully submits this memorandum of law in support of his emergency motion to expedite this appeal and decide it on the record below. The relevant facts are set forth in the accompanying declarations of Jim Walden and John R. Cuti.

## ARGUMENT

This appeal is highly time sensitive because the petitioning period for candidates seeking to run for Mayor as the nominee of an independent body begins on April 15, 2025, and Plaintiff-Appellant must take steps before that date in order to conduct his petitioning efforts effectively.

## THIS COURT SHOULD DECIDE THIS
## APPEAL ON THE PAPERS FILED BELOW

In cases in which the District Court has decided a motion for preliminary injunction in a case regarding an impending deadline in an election-law dispute, this Court has decided appeals on a highly compressed schedule and on the papers filed below. *See*, *e.g.*, *Coto v. New York City Bd. of Elections*, 97 F.3d 680 (1996) ("This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel").

Although Federal Rule of Civil Procedure 52(a)(2) requires the District Court to make findings and fact and conclusions of law in determining a motion for a preliminary injunction, its failure to do so does not deprive this Court of jurisdiction. *See Mobil Shipping and Transp. Co. v. Wonsild Liquid Carriers Ltd.*,

190 F.3d 64, 69 (2d Cir. 1999) ("a district court's non-compliance with Rule 52 does not necessarily deprive this Court of the ability to conduct intelligent appellate review. . . . Rather, we may review the district court's decision 'if we are able to discern enough solid facts from the record to permit us to render a decision.'") (internal citation omitted). "[I]t is settled that compliance with Rule 52 is not jurisdictional and the appellate court may decide the appeal without further findings if it feels that it is in a position to do so. The appellate court will determine the appeal without further elaboration by the trial judge if . . . if the only contentions raised by the parties on appeal do not turn on findings of fact." 9C Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2577 (3d ed.) (2024).

As the accompanying declarations show, this appeal raises only questions of law. There are no disputed facts. Accordingly, this Court should consider this appeal based on the legal memoranda and other papers filed below, and render its decision after an oral argument conducted at the earliest practicable time.

## CONCLUSION

This Court should grant the relief requested in Plaintiff-Appellant's emergency motion, and determine this appeal on the papers below.

Respectfully submitted,

_____/s_____

John R. Cuti

2

Cuti Frisch PLLC
40 Fulton St., 17 Fl.
New York, NY 10038
*Counsel for Plaintiff-Appellant*

Dated:    April 2, 2025
          New York, New York