# 25-764-CV

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



JIM WALDEN,

*Plaintiff-Appellant,*

*v.*

PETER S. KOSINSKI, HENRY T. BERGER, ESSMA BAGNUOLA,
ANTHONY J. CASALE, KRISTEN ZEBROWSKI STAVISKY, RAYMOND J. RILEY,
NEW YORK CITY OF BOARD OF ELECTIONS,

*Defendants-Appellees.*

―――――――――

*On Appeal from the United States District Court
for the Eastern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT

John R. Cuti
CUTI FRISCH PLLC
*Attorneys for Plaintiff-Appellant*
40 Fulton Street, 17th Floor
New York, New York 10038
212-285-8000


PHP    (212) 719-0990
appeals@phpny.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ........................................ 1

STATEMENT OF THE ISSUES ............................................ 1

STATEMENT OF THE CASE ................................................ 2

    Relevant Procedural History ................................................. 3

    Parties, Independent Bodies, and Ballot Access under the Election Law ........... 5

    Names of Parties and Independent Bodies ......................................... 7

    Earlier Uses of Independence or Independent in a political body's name .......... 9

    The Legislature Imposes the Independence Ban ................................. 10

    Walden's Campaign for Mayor as an Independent Candidate .......................... 11

    Walden's Use of the "Independence Party" name will not cause Confusion ..... 12

    Walden's Ongoing Preparations for Circulation of Nominating Petitions ........ 13

    The Major Parties Control Election Administration and the Legislature .......... 14

    Absent Injunctive Relief, the City Board will Enforce
the Independence Ban against Walden .............................................. 15

    The Decision Below ......................................................... 15

STANDARD OF REVIEW ...................................................... 17

SUMMARY OF ARGUMENT ................................................. 18

ARGUMENT ...................................................................... 19

I.   The Independence Ban Violates Walden's First Amendment Rights ............... 19

A. The Independence Ban is a Content-Based Restriction on Core Political Speech Subject to Strict Scrutiny.................................................19

B. The Independence Ban is Neither Necessary to Achieve nor Narrowly Tailored to Further any Legitimate State Interest ..................................28

II. Plaintiff Will be Irreparably Harmed Absent an Injunction, and the Balance of Equities and Public Interest Decidedly Favor Granting that Relief.................33

CONCLUSION ................................................................................ 35

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)............................................................................. 36

## <u>TABLE OF AUTHORITIES</u>

**<u>Pages</u>**

**<u>Cases</u>**

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ........................................................................34

*Anderson v. Sutton,*
   No. 24-cv-02224 (DG), 2024 WL 4050277 (E.D.N.Y. September 3, 2024). 34, 35

*Bachrach v. Secretary of Com.,*
   382 Mass. 268 (Mass. 1981).................................................... 27, 28, 33

*Buckley v. American Constitutional Law Foundation, Inc.,*
   525 U.S. 182 (1999) ............................................................... 21, 22

*Burson v. Freeman,*
   504 U.S. 191 (1992) ........................................................................25

*Carey v. Chiavaroli,*
   97 A.D.2d 981 (4th Dep't 1983)..........................................................9

*Cook v. Gralike,*
   531 U.S. 510 (2001) ........................................................................25

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861,*
   96 F.4th 351 (2d Cir. 2024)..............................................................17

*Green Party of New York v. New York State Bd. of Elections,*
   389 F.3d 411 (2d Cir. 2004)....................................................... 29, 33

*Green Party of State of New York v. Weiner,*
   216 F. Supp. 2d 176 (S.D.N.Y. 2002)................................................14

*Green Party v. New York State Board of Election,*
   267 F.Supp.2d 342 (E.D.N.Y. 2003)...................................................6

*Lerman v. Bd. of Elections in City of N.Y.,*
   232 F.3d 135 (2d Cir. 2000)...................................................... passim

*Marcantonio v. Heffernan,*
   192 Misc. 868 (Sup. Ct. N.Y. Co.), *aff'd* 298 N.Y. 661 (N.Y. 1948) ....................7

*Mazo v. New Jersey Sec'y of State,*
   54 F.4th 124 (3d Cir. 2022)...................................................... 20, 23, 25

*McDonough v. Tutunjian,*
   136 Misc.2d 1039 (Sup. Ct. Rensselaer Co. 1987) ...............................6

*McIntyre v. Ohio Elections Com'n,*
   514 U.S. 334 (1995) ............................................................... 20, 22

*Meyer v. Grant,*
   486 U.S. 414 (1988) .................................................... 20, 21, 25, 32

*Minnesota Voters All. v. Mansky*,
   585 U.S. 1 (2018) ................................................................ 17, 27
*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
   883 F.3d 32 (2d Cir. 2018)...............................................................17
*New York Progress & Prot. PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013)..............................................................34
*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ........................................................ 26, 27, 31
*SAM Party of New York v. Kosinski*,
   987 F.3d 267 (2d Cir. 2021)..............................................................21
*Tashjian v. Republican Party of Conn.*,
   479 U.S. 208 (1986) .........................................................................22
*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997) ................................................................ passim
*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) ........................................................ 22, 24, 31

## Statutes

28 U.S.C. § 1292(a)(1)........................................................................1
28 U.S.C. § 1331................................................................................1
28 U.S.C. § 1343................................................................................1
N.Y. Elec. Law § 2-124 ............................................................... passim
N.Y. Elec. Law § 1-104.................................................................6, 13
N.Y. Elec. Law § 6-104.....................................................................6
N.Y. Elec. Law § 6-138 ............................................................... passim
N.Y. Elec. Law § 6-140 ................................................................ 12, 25
N.Y. Elec. Law § 6-142.................................................................7, 12
N.Y. Elec. Law § 6-154.....................................................................7
N.Y. Elec. Law § 6-158....................................................................14
N.Y. Laws ch. 233 § 1 (1976) ...........................................................7
N.Y. Laws ch. 433 § 1 (1954) ...........................................................7

## Other Authorities

David D. Biklen & Henry S. Cohn, *A Primer on Political Party Names*,
   16 Conn. L. Rev. 873 (1984) ............................................................7

## STATEMENT OF JURISDICTION

This is an appeal from an order entered on April 1, 2025, by the United States District Court for the Eastern District of New York (the Honorable LaShann DeArcy Hall) denying Plaintiff-Appellant's motion for a preliminary injunction without opinion. A-5. A notice of appeal was timely filed on April 1, 2025. A-182. On April 5, 2025, the District Court issued a Memorandum and Order. A-160. The District Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1. Did the District Court err in determining that Plaintiff-Appellant ("Walden") was unlikely to prevail on his First Amendment challenge to New York Election Law §§ 2-124(2) and 6-138(3)(f) (together, the "Independence Ban"), a law that bans Walden from using any form of the words "independence" or independent" in the name of the independent body printed on his nominating petitions that his circulators will discuss one-on-one with potential voters? (a) Is this content-based restriction on what party name a petition circulator can ask a voter to select on a nominating petition subject to strict scrutiny? (b) Is a nominating petition circulated among and discussed with voters at the outset of the electoral process, months before the election, a nonpublic forum? (c) Is the Independence Ban's content-based regulation of core political speech necessary to

achieve and narrowly tailored to further the State's interest in avoiding voter confusion?

2. Did Walden show that he would be irreparably harmed absent a preliminary injunction, and that the balance of equities and public interest favored granting a preliminary injunction?

## STATEMENT OF THE CASE

In this action for declaratory and injunctive relief, Walden, a candidate for Mayor of New York City, asserts that, as applied to him, the Independence Ban violates the First and Fourteenth Amendments. Walden moved for an order preliminary enjoining Defendants-Appellees (officials of the New York State Board of Elections sued in their official capacities (the "State Board"), and the New York City Board of Elections (the "City Board")) from enforcing this ban against him, specifically so that Walden can use the name "Independence Party" on nominating petitions that he intends to have circulators discuss with voters in order to persuade them to sign.

The District Court denied the motion based on the erroneous determination that, although the Independence Ban is a content-based restriction on political speech, it did not violate the First Amendment because it was a reasonable regulation of speech in a nonpublic forum. That conclusion is insupportable. Because the Independence Ban is a content-based restriction on one-on-one

2

communication between petition circulators and would-be petition signers months before the election, it is subject to strict scrutiny. The District Court should have enjoined its enforcement against Walden because the Independence Ban is neither narrowly tailored to further, nor does it in any way advance, the State's asserted interest in preventing voter confusion.

### *Relevant Procedural History*

On January 6, 2025, Walden filed a complaint seeking declaratory and injunctive relief. A-7. On January 15, 2025, Walden moved for an order preliminary enjoining Defendants-Appellants from enforcing this prohibition against him. A-22.

On January 31, 2025, the State Board served opposition papers, and the City Board asked to be excused from participating in this litigation and stated that it took no position on the merits. A-20. On February 7, 2025, Walden served his reply papers, and, under the "bundling rule" often followed in the Eastern District, also filed all the motion papers. A-22-129.

On March 4, 2025, Walden requested oral argument at the earliest possible opportunity. A-130. On March 11, 2025, the District Court ordered a hearing on the motion for preliminary injunction to be held on March 14, 2025. A-4. On March 14, 2025, the District Court conducted the hearing. There was no argument on the merits of the First Amendment claim. *See* A-131-53 (Hrg. Tr.). Instead, the District

3

Court elicited a representation from the State Board that it would not enforce the

Independence Ban against Walden or require the City Board to do so. A-142-51.

After the hearing, the District Court entered an order memorializing the State

Board's representations:

> At the hearing, the State BOE made the following representations: (1)
> although the State BOE has a position on whether N.Y. Elec. Law § 2-
> 124, the Provision for Party Names and Emblems (the 'Party Names
> Provision'), applies to independent bodies, it will not impose its
> position on the City BOE; (2) the State BOE will not seek to enforce
> the Party Names Provision against Plaintiff; and (3) the State BOE has
> no involvement in printing the New York City mayoral election
> ballots and, thus, cannot subsequently exclude Plaintiff from the ballot
> after the City BOE accepts Plaintiff's independent nominating
> petition.

A-4-5. The District Court directed the City Board to explain its position by

2:00 p.m. on March 17, 2025, and scheduled a continued hearing on the

motion for March 18, 2025. *Id*.

On March 17, 2025, the City Board filed a letter stating that, although it did

not take a position on the merits, it would enforce the State Board's interpretation

that the Independence Ban applied to Walden. A-154-55. The next morning, the

District Court adjourned the hearing *sine die*. A-5. Later that morning, Walden filed

a letter explaining that it was now clear that the City Board would enforce the

Independence Ban against Walden, and that he therefore required immediate

injunctive relief to protect his First Amendment rights. A-157.

On March 31, 2025, Walden filed a letter noting that the petition-circulation

4

period began on April 15, 2025, and that he needed to print petitions and take other steps before then to express his chosen political message effectively. A-159.

On April 1, 2025, the District Court entered an order denying Walden's motion for preliminary injunction, without opinion. A-5 (stating "Memorandum and Order to follow"). Walden filed a notice of appeal that day. A-182. On April 3, 2025, this case was docketed in this Court, and Walden filed an emergency motion for expedited briefing and determination of the appeal. Dkt. 13. On April 4, 2025, this Court granted the motion in part and ordered Walden to file his opening brief by 5:00 p.m. on April 7, 2025, Defendants-Appellees to file an opposition brief by 5:00 p.m. on April 14, 2025, and Walden to file a reply brief by 5:00 p.m. on April 15, 2025. Dkt. 18.1.

On April 5, 2025, the District Court issued a Memorandum and Opinion regarding its earlier denial of the motion for a preliminary injunction. A-160-81.

***Parties, Independent Bodies, and Ballot Access under the Election Law***

There are two ways to obtain access to the ballot as a candidate for New York City Mayor: as the nominee of a "party" or as the nominee of an "independent body." A-46 (¶ 3). A "party" is defined as "any political organization which . . . at the last preceding election for governor received, at least two percent of the total votes cast for its candidate for governor, or one hundred thirty thousand votes, whichever is greater, in the year in which a governor is elected and at least

two percent of the total votes cast for its candidate for president, or one hundred thirty thousand votes, whichever is greater, in a year when a president is elected." N.Y. Elec. Law § 1-104(3). An "independent body" is defined as "any organization or group of voters which nominates a candidate or candidates for office to be voted for at an election, and which is not a party as herein provided." *Id*. at § 1-104(12).

"Thus, there are political organizations that are commonly and correctly referred to as political parties that are not 'parties' within the meaning of New York law. To avoid confusion [this brief] will use the upper-case term 'Party' to refer to political organizations that meet the above-quoted definition of 'party' in § 1-104(3)." *Green Party v. New York State Board of Election*, 267 F.Supp.2d 342, 344 (E.D.N.Y. 2003). Independent bodies are free to use the word "party" in their names, and often do, but that does not give them the rights afforded to a Party. *See McDonough v. Tutunjian*, 136 Misc.2d 1039, 1041 (Sup. Ct. Rensselaer Co. 1987).

New York law privileges Parties in many ways. For example, a Party automatically has access to the ballot statewide, N.Y. Elec. Law at §§ 6-104, 6-138(1); thus, Parties often are called "ballot-status parties." A-46 (¶ 5). There are currently four Parties in New York: the Democratic, Republican, Conservative, and Working Families Parties (the Democratic and Republican Parties, collectively, the "Major Parties"). A-47 (¶9).

By contrast, an independent body is not automatically entitled to place a candidate on the ballot. Instead, one seeking to appear on an independent body's ballot line must obtain thousands of signatures from registered voters on nominating petitions, and then survive potential challenges to the validity of the petitions. N.Y. Elec. Law §§ 6-138, 6-142, 6-154; *see also* A-47 (¶ 10).

### Names of Parties and Independent Bodies

New York law has long prohibited a Party from using a name or emblem likely to confuse voters because it is similar to the existing name of another Party or independent body. *See Marcantonio v. Heffernan*, 192 Misc. 868 (Sup. Ct. N.Y. Co.), *aff'd* 298 N.Y. 661 (N.Y. 1948). Since 1954, New York also has barred a Party from using the words "American", "United States", "National", "New York State", or "Empire State", in its name. N.Y. Laws of 1954, ch. 433 § 1 (amending Election Law § 20); N.Y. Laws of 1976, ch. 233 § 1 (recodifying § 20 as §2-124).[1]

---

[1] Until it was amended, § 2-124(2) had banned only the words "American," "United States," "National," "New York State," and "Empire State" from being used in a Party name. *See* Laws of 1954, ch. 433, § 1, Laws of 1976, ch. 233, § 1. Arguably, using these words or phrases would directly suggest that the federal or state government supported the party, and thus might be misleading. But this flat ban on the content of political speech is likely unconstitutional. *See* David D. Biklen & Henry S. Cohn, *A Primer on Political Party Names*, 16 Conn. L. Rev. 873, 883 (1984) ("New York's prohibition of the use of a party name that includes [these words] or any abbreviation thereof would probably not survive constitutional scrutiny"). Counsel has not found a case in which the ban on these words was challenged, and that ban is not challenged here.

In 2022, the Legislature amended this law to ban two additional words, Independence and Independent. A Party is prohibited from using any of the banned words, and from using a name that is similar to or likely to create confusion with the name of any existing Party or independent body. *See* N.Y. Elec. Law § 2-124(2).[2] A different statute, N.Y. Elec. Law § 6-138(3), governs the name of an independent body. It prohibits an independent body from using a name that includes the name, abbreviation, or part of the name of an existing Party or of a different independent body that filed its nominating petitions first. *Id*. at subd. (a).[3]

---

[2] As amended, N.Y. Elec. Law § 2-124(2) provides that:

> The name of a party shall be in the English language and shall not include the words "American", "United States", "National", "New York State", "Independence" or "Independent", or "Empire State", or any abbreviation or plural thereof, nor the name or part of the name, or an abbreviation of the name, of an existing party. . . . The name . . . chosen shall not be similar to or likely to create confusion with the name or emblem of any other existing party or independent body.

[3] N.Y. Elec. Law § 6-138(3)(a) provides that:

> The name selected for the independent body making the nomination shall be in English characters and shall not include the name or part of the name or an abbreviation of the name or part of the name, nor shall the . . . name . . . create the possibility of confusion with the . . . name of a then existing party, or the emblem or name of an independent body selected by a previously filed independent nominating petition for the same office. Such name selected for such independent body shall continuously remain the name of such party as defined in subdivision three of section 1-104 of this chapter.

8

*See also Carey v. Chiavaroli*, 97 A.D.2d 981 (4th Dep't 1983). As pertinent here, §
6-138(3)(f) requires that the name of an independent body appearing on an
independent nominating petition "shall also conform to the requirements of [§ 2-
124(2)] with respect to the names or emblems to be selected by a party."

### *Earlier Uses of Independence or Independent in a political body's name*

In 1991, New York citizens dissatisfied with the choices offered by the
Major Parties formed the Independence Party of New York ("IPNY") as an
independent body. A-47 (¶ 11). In 1994, given its success in statewide elections,
IPNY became a Party, A-47 (¶ 12), A-53-54, but lost that ballot status in 2020,
because the amended Election Law heightened the threshold for qualifying as a
Party. A-49 (¶ 18). It has not fielded a candidate since. *Id*. ¶ 19.

In 2021, Curtis Sliwa, the nominee of the Republican Party for Mayor, also
obtained access to the ballot as the nominee of a different independent body named
the Independent Party. A-49 (¶ 20), A-62-63. A rival challenged Sliwa's
nominating petitions, contending that listing a candidate of a new organization
named the Independent Party on the ballot would confuse voters who might recall
the former Independence Party. A-50 (¶ 24), A-80-85. The City Board rejected that
argument, determining that because that Independence Party no longer existed,
there would be no confusion. *Id*.

9

***The Legislature Imposes the Independence Ban***

On January 11, 2021, members of the Assembly introduced a bill to add "Independence" and "Independent" to the list of words that Section 2-124(2) bans from use in a Party name. *See* 2021 Assembly Bill No. 1819. Several days later, a New York State Senator sponsored a bill proposing the same change. *See* 2021 Senate Bill No. 1851. The Senator apparently based his bill on a survey of 200 voters enrolled in the IPNY conducted by a newspaper in or around December 2012. A-49 (¶ 21), A-65-71. The newspaper reported that 85% of survey respondents – merely 169 voters statewide, just .04% of members of the party – thought they had enrolled in no party rather than in the Independence Party of New York. A-49 (¶ 22), A-73. It appears that the newspaper survey on which the Legislature relied asked voters only about confusion when registering to vote. *Id.* This survey apparently was the sole evidence on which the Senate relied to justify the amendment to § 2-124(2). *See* 2021 NY S.B. 1851, Committee Report.

The sole potential confusion cited by the Legislature related to those who are registering to vote. *Id*. And it may be that new voters in and before 2012 – when the survey was conducted – were confused because New York's voter registration form was itself somewhat confusing. It listed the no-party option in a list of parties. *See* A-26 (¶ 2), A-29. But the State Board revised the form in 2015, six years before the Legislature amended § 2-124(2), and clarified the Political Party section

10

by identifying two distinct options – either enroll in one of the listed political parties, or choose not to enroll in any party. *See* A-26 (¶ 3), A-31. The State Board revised and clarified the registration form again in January 2019.[4]

The State Board has disclaimed any argument that Walden's use of the Independence Party name would create confusion with respect to any other political organization using that name, "whether defunct or currently existing." ECF No. 15-5 (State Board Memorandum of Law Opposing Motion) at 18.

***Walden's Campaign for Mayor as an Independent Candidate***

Walden has not been enrolled in any political party since 2006. A-23 (¶ 3). His core political message is independence from the Major Parties and the way they historically have conducted government. *Id*. ¶ 4. His platform promises that he will not make patronage appointments, will make City agencies subject to external review to prevent corruption, and will forbid his administration from doing favors for financial contributors, and he has promised to fight to end political

---

[4] The State Board revised the voter registration form in 2019 "to provide clarity" to persons not wishing to enroll as a member of a Party by adding "the option, in plain language: 'I do not want to enroll in any political party and wish to be an independent voter' followed by a check box labeled 'No Party.'" A-100-01 (¶¶ 10-12). The State Board chose not to submit the 2019 form; Walden did so in reply. A-125 (¶ 2), A-127-28. Because that form also included an option for voters to register as a member of the then-existing Independence Party, the State Board plainly did not believe voters would be confused when given a choice to register as an unaffiliated "independent" or to enroll as a member of the Independence Party.

gerrymandering, a longstanding practice designed to entrench the power and influence of the Major Parties. *Id*. Walden and his supporters wish to name their new independent body the Independence Party because that name directly reflects their political message. *Id*. ¶¶ 6-7.

As a candidate seeking the nomination of an independent body, Walden must file nominating petitions with thousands of valid signatures. *See* N.Y. Elec. Law § 6-142(2)(b). "New York Law requires an independent nominating petition to, among other things, state the name of an independent body." A-99 (¶ 4). His campaign can obtain petition signatures from any registered voter, whether enrolled in a Party or not. *See* N.Y. Elec. Law § 6-138(1). Among other things, every person who signs a nominating petition must state that "I do hereby nominate the following named person as a candidate for election to public office to be voted for at the election to be held on the [4th] day of [November], 20[25], and that I select the name _____ as the name of the independent body making the nomination. . . ." *See* N.Y. Elec. Law § 6-140(1)(a).[5]

### *Walden's Use of the "Independence Party" name will not cause Confusion*

The independent body whose nomination Walden seeks will not nominate any candidate for Governor or President. A-24 (¶ 8). Therefore, that independent

---

[5] A sample independent nominating petition form is available at https://elections.ny.gov/system/files/documents/2023/10/sample-independentnominatingpetition.pdf

body could never become a "party" as defined in Election Law §1-104(3). Thus, the name of Walden's new independent body will never appear on New York's voter registration form (which lists only Parties). A-37 (¶ 7). Therefore, Walden's use of the name Independence Party cannot cause confusion in the voter registration process.

Nor would there be confusion at the ballot box because only one person can appear on the ballot as the nominee of an organization named the Independence Party. *See* N.Y. Elec. Law § 6-138(3)(a).

### *Walden's Ongoing Preparations for Circulation of Nominating Petitions*

The campaign is actively engaged in promoting its message and planning for its petition drive using the Independence name. A-24-5 (¶ 11). Among other things, Walden is recruiting staff to circulate the nominating petitions, planning a communications strategy focused on spreading the independence message, and soliciting financial contributions by stressing Walden's message of political independence. *Id*. ¶ 12.

Walden continues to plan for a petition drive, including by recruiting circulators who will approach and speak to registered voters and ask them to sign petitions nominating him as a candidate of an independent body named the Independence Party. A-129 (¶1).

13

Candidates seeking the nomination of an independent body may begin to circulate nominating petitions on April 15, 2025. N.Y. Elec. Law § 6-138(4). No valid petition signatures may be obtained after May 27, 2025. *Id*. § 6-158(9).

The looming threat that Defendants will enforce the Independence Ban against his campaign inhibits Walden and his supporters from communicating their chosen message. A-25 (¶ 14); A-129 (¶ 2). If the Independence Ban is enforced against him, Walden and his supporters will have wasted their planning efforts and be compelled to change their political message and campaign strategy. A-25 (¶ 15).

### *The Major Parties Control Election Administration and the Legislature*

The Major Parties control the administration of elections at the state and local level. A-50 (¶ 25). Several provisions of the Election Law "undoubtedly give the major political parties, (the Republican and Democratic Parties for all practical purposes) broad authority in supervising the administration of elections." *Green Party of State of New York v. Weiner*, 216 F. Supp. 2d 176, 193 (S.D.N.Y. 2002). "The major parties appoint election commissioners to both the state and local election boards. Election Law §§ 3-100, 3-200. In addition, local polling clerks and poll inspectors are nominated from lists submitted by the major parties. Election Law § 3-404." *Id*. The Major Parties control the Legislature, which writes and enacts the Election Law, A-50 (¶ 26), and they appoint or nominate virtually all of the judges of the New York courts. *Id*. ¶ 27.

***Absent Injunctive Relief, the City Board will
Enforce the Independence Ban against Walden***

The State Board opines that the Independence Ban bars Walden from using the word Independence in the name of the independent body whose nomination he seeks, but has stipulated that it will neither enforce that bar against Walden, nor "impose" its view on the City Board. A-4-5. The City Board continues to assert that it "takes no position" regarding Walden's constitutional claim. A-155. The City Board admits, however, that it will reject Walden's nominating petitions if they use the name "Independence Party" because it is "obligated to apply [Independence Ban] as written, consistent with the State [Board's] position on the law." *Id*.

***The Decision Below***

The District Court rejected the State Board Defendants' contention that Walden lacked standing to sue them, and held they were proper parties. A-165-69. By deciding the motion on its merits, the lower court implicitly rejected the State Board Defendants' contention that the motion for a preliminary injunction was not ripe.

The District Court concluded that Walden was unlikely to prevail on his First Amendment challenge. Treating the Independence Ban as a time, place, or manner regulation of political expression, the District Court applied the *Anderson-Burdick* balancing test. A-170-71. Although it acknowledged that the Supreme Court and this Court have repeatedly held that the circulation of petitions is core political

15

speech and that regulations that directly restrict such activity are subject to strict scrutiny, the District Court found those decisions inapposite. A-174-75. The District Court determined that the Independence Ban did not impose a severe burden on Walden's First Amendment rights because it did not "actually proscribe[] his ability to engage in petition circulation activity," A-176, and applied a deferential standard of review. A-175, 180.

Despite that the undisputed facts showed that there was no risk of confusion relating to the voter registration process because Walden's independent body will never become a Party that appears on the voter registration form, the District Court deferred to the State Board's "concern about the inadvertent enrollment of independent voters in an 'Independence Party.'" A-176. The District Court then accepted the State Board's argument that the Independence Ban was justified because it prevented a candidate from communicating to voters that he represented all independent voters, a message that might confuse voters. *Id*. The District Court rejected Walden's contention that it could not credit the State's asserted interest in preventing voter confusion because the Independence Ban is woefully underinclusive in that it allows many other names – such as "Nonpartisan" or "Unaffiliated" or "No Party" – that communicate precisely the same message. A-177 (fn. 7). Instead, the District Court determined that Walden could just abandon

16

the "Independence" name he wants petition-signers to select, and use one of "the litany of words that have the same meaning as 'Independence.'" *Id.*

Although it acknowledged that the Independence Ban was a content-based restriction on political speech, the District Court determined that a ballot is a nonpublic forum, and that it "is axiomatic that if a ballot is not a public forum, neither is the nominating petition that serves as a vehicle for obtaining access to the ballot." A-180 (citing no authority). The District Court again applied a mere reasonableness standard of review, relying solely on a decision regarding limitations on speech inside the polling place on election day. A-180-81 (citing *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 2 (2018)).

## STANDARD OF REVIEW

"This Court 'reviews a district court's legal rulings *de novo* and its ultimate denial of a preliminary injunction for abuse of discretion.' *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). 'A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law.' *Id.* (internal quotation marks and citation omitted)." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 355 (2d Cir. 2024).

## SUMMARY OF ARGUMENT

Enforcing the Independence Ban against Walden would violate his fundamental First Amendment rights. Walden will engage in core political speech when he sends circulators into the field to interact with voters to persuade them to sign a petition, which requires the signer to state that she nominates Walden for election to office *and* that she selects the name of the independent body that will make that nomination. But the circulator cannot persuade the signer to select a name using the word "independence" because the Independence Ban makes that unlawful. The Independence Ban thus directly limits one-on-one communications between a circulator and potential petition-signer months before any ballot is cast. Such content-based regulation of core political speech is subject to strict scrutiny, not the *Anderson-Burdick* balancing test the District Court wrongly applied. New York of course has a compelling interest in preventing voter confusion, but the Independence Ban is neither necessary to achieve nor narrowly tailored to further that interest.

A State plainly cannot forbid a candidate from using a party name because of the message it sends to voters. Yet the State Board defended the Independence Ban below precisely because it was intended to prevent a candidate from *connoting an association that he represents all independent voters*, and the District Court determined that this was a legitimate state interest. Although the District Court

acknowledged that the circulation of petitions involves core political speech, and that the Independence Ban is a content-based restriction, it erroneously determined that a nominating petition is a nonpublic forum and applied a mere reasonableness standard of review. In any event, the Independence Ban cannot survive even intermediate scrutiny because there is no risk of voter confusion.

The certainty that the Independence Ban will be enforced against him substantially chills Walden's core political speech and thus causes irreparable injury. The balance of equities and the public interest decidedly favor protecting his First Amendment rights. The District Court erred in denying the motion for injunctive relief. This Court should order the District Court forthwith to enjoin Defendants-Appellees from enforcing the Independence Ban against Walden.

## ARGUMENT

I.    **The Independence Ban Violates Walden's First Amendment Rights**

A.    **The Independence Ban is a Content-Based Restriction on Core Political Speech Subject to Strict Scrutiny**

The Independence Ban is subject to strict scrutiny both because it is a direct restriction of core political speech, and because it is a content-based restriction that singles out a particular message.

Circulating nominating petitions, "while part of the ballot access process, clearly constitute[s] core political speech subject to exacting scrutiny." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 146 (2d Cir. 2000). "[T]he

19

circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988). Because the Independence Ban directly restricts what name Walden can ask petition signers to choose for the independent body that will nominate him, it is a regulation that "clearly and directly restricts 'core political speech' as opposed to the 'mechanics of the electoral process'" and thus "'so plainly impose[s] a "severe burden" on a plaintiff's First Amendment rights "that application of strict scrutiny clearly will be necessary." *Lerman*, 232 F.3d at 146 (quoting *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 208 (1999) (Thomas, J., concurring), and citing *id.* at 192 n. 12 (opinion of the court)).

The District Court erred by refusing to apply strict scrutiny. Instead, it accepted the State Board's contention that because this case broadly involves an election, the sliding-scale balancing test known as the *Anderson-Burdick* framework applied. A-170-71. As the District Court noted, that framework reflects that the Constitution "affords states broad power to regulate the times, places, and manner in which elections are held." A-170. But the District Court failed to recognize that the *Anderson-Burdick* balancing test applies only to laws that regulate the "mechanics of the electoral process." *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995); *see also Mazo v. New Jersey Sec'y of State*, 54 F.4th

124, 136-38 (3d Cir. 2022).[6]

But there can be no such weighing and balancing where a law directly restricts core political speech. *Id.*; *see also Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring). That is why this Court and the Supreme Court have applied strict scrutiny and invalidated laws that merely restricted who could qualify as a petition circulator, because circulating petitions is core political speech. *Lerman*, 232 F.3d at 146 (requirement that circulator reside in district where she circulated petitions); *Meyer*, 486 U.S. at 424-28 (prohibition on use of paid circulators); *Buckley*, 525 U.S. at 197-98 (requirement that circulators were identification badges). If those indirect restrictions on core political speech were subject to strict scrutiny, then *a fortiori* so is the Independence Ban's direct and content-based restriction of core political speech. "When a State's election law directly regulates core political speech, we have always subjected the challenged restriction to strict scrutiny." *Buckley*, 525 U.S. at 207 (Thomas, J., concurring).

---

[6] When the *Anderson-Burdick* framework applies, "the rigorousness of [a court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights. First, if the restrictions on those rights are 'severe,' then strict scrutiny applies. But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon . . . First and Fourteenth Amendment rights . . . the State's important regulatory interests are generally sufficient to justify the restrictions." *SAM Party of New York v. Kosinski*, 987 F.3d 267, 274 (2021) (cleaned up).

The District Court found this line of cases "inapposite" because the Independence Ban does not "actually proscribe[ Walden's] ability to engage in petition circulation activity." A-174-75. But Walden need not show that the Independence Ban proscribes him from circulating petitions; he need show only that it restricts or limits his ability to circulate petitions. After all, the campaigns in *McIntyre*, *Meyer*, *Buckley*, and *Lerman* were able to circulate petitions under the challenged laws. Those laws violated the First Amendment, however, because they *limited* or *restricted* their ability to do so. The same is true here. But for the Independence Ban, Walden's circulators would speak to voters to persuade them to sign a petition and select the "Independence Party" name for the independent body.[7]

The District Court also relied on *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), to support its determination that limits on political speech are justified so long as the candidate or party has alternative means of expressing its

---

[7] The name of the candidate's political organization is a critical part of his political expression. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986) ("party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise"); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 464 (2008) (Scalia, J,, dissenting) ("Parties devote substantial resources to making their names trusted symbols of certain approaches to governance" and a party name may be "the most important resource that the party possesses.") (internal quotation omitted).

views, A-172-74, because "'[b]allots serve primarily to elect candidates, not as forums for political expression.'" A-173 (quoting *Timmons*, 520 U.S. at 363). The reliance on *Timmons* was misplaced.

In *Timmons*, the New Party asserted a First Amendment right to place a candidate on the ballot even if that candidate already would appear on the ballot as a different party's nominee. *Id*. Noting that ballots "serve primarily to elect candidates, not as forums for political expression," *id*. at 362, the Court rejected the New Party's claim because the state had valid interests "in ballot integrity and political stability." *Id*. at 370. Thus, the law challenged in *Timmons* regulated the mechanics of elections, not core political speech. *See Mazo*, 54 F.4th at 35 (because *Timmons* involved the "archetypical mechanic of the electoral process" – the form and content of the ballot – it was properly analyzed under the *Anderson-Burdick* framework).

In balancing the state's interests against the New Party's rights, the Court noted that Minnesota did not prevent the New Party from expressing its views. The party was free to place a different candidate on the ballot, or to persuade the candidate who had secured another party's nomination to appear as its candidate instead. *Timmons*, 520 U.S. at 360. To be sure, the ballot is not primarily a forum for expression, but as the Court explained, "[l]ike all parties in Minnesota, the New Party *is able to use the ballot to communicate information about itself and its*

23

*candidate to voters*, so long as that candidate is not already someone else's candidate." *Id*. at 362 (emphasis added).[8]

   *Timmons* does not support the District Court's determination. First, the injunction Walden seeks pertains to nominating petitions, not the ballot. Thus, Walden does not seek to use the ballot as a means of political expression; he is not on the ballot yet, and the election is months away. Second, unlike Minnesota, New York has long allowed fusion voting where a single candidate may appear on multiple ballot lines. *See id*. at 357. If Walden obtains access to the ballot as the candidate of an independent body named the Independence Party, he will not be using the "ballot itself to send a particularized message," *id*. at 363. He will simply be listed on the ballot as the candidate of the body that nominated him, like the nominees of all other parties or bodies that appear on the ballot.

   Ignoring that ballots do serve as a vehicle for some political expression, the District Court next determined that a ballot is simply not a public forum in any sense. A-180 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 461 (2008) (Roberts, C.J., concurring)). Even assuming that is so, the District Court cited nothing to support its conclusion that "[i]t is axiomatic

---

[8] The Court's observation that ballots can be vehicles for political expression is hardly surprising. New York has long allowed parties and independent bodies to have not only their names printed on the ballot, but also symbolic emblems. *See* N.Y. Elec. Law §§ 2-124(2) and 6-138(3)(a).

that if a ballot is not a public forum, neither is the nominating petition that serves as [a] vehicle for obtaining access to the ballot." A-180. That determination was wrong. Ballots and nominating petitions are fundamentally different.

A ballot is a state-created document the primary purpose of which is to elect candidates. *Timmons*, 520 U.S. at 363. "For ballots to be effective tools for selecting candidates and conveying the will of voters, they must be short, clear, and free from confusing or fraudulent content. This necessarily limits the degree to which the ballot may – or should – be used as a means of political communication." *Mazo*, 54 F.4th at 35 (collecting cases). Casting one's ballot is the final step in the electoral process. *Cook v. Gralike*, 531 U.S. 510, 532 (2001) (Rehnquist, C.J., concurring). The voter is alone when the ballot is cast, and the ballot is secret. *See Burson v. Freeman*, 504 U.S. 191, 2016 (1992).

By contrast, nominating petitions are circulated at the very beginning of the electoral process; here, for example, Walden must circulate petitions and submit them between April 15 and May 27, 2025, more than five months before the general election. A-98 (¶ 3). Far from being secret and executed alone in a protected area, nominating petitions must be discussed with potential signers who must sign in the presence of a witness, N.Y. Elec. Law § 6-140(1)(b), and then must be publicly filed with the City Board. *Id*. § 6-144. Therefore, even though the circulation of nominating petitions is "part of the ballot access process," *Lerman*,

25

232 F.3d at 146, it "clearly constitute[s] core political speech subject to exacting scrutiny." *Id*.

Unless enforcement of the Independence Ban is enjoined, Walden's circulators cannot urge potential signers, and the people they interact with in the field cannot be persuaded, to select the Independence Party name. Thus, the Independence Ban directly limits interactive speech about the need for political change. Accordingly, the District Court should have applied strict scrutiny.

Strict scrutiny also applies because the Independence Ban is a facially content-based restriction on protected speech. Indeed, the State Board sought below to justify the Independence Ban because Walden's use of the name "Independence Party" would "connote an association" with the category of independent voters. A-102 (¶15). In other words, the Independence Ban prohibits Walden's intended speech "because of the . . . message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Such "[c]ontent-based laws – those that target speech based on its communicative content – are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*. The District Court erred in failing to apply this standard by equating a nominating petition with a ballot, and treating restrictions on speech during the petition circulation phase in the same way as political speech is regulated in the polling place on election day. Both

determinations were incorrect.

The District Court next determined that "even if the Independence Ban is a content-based restriction, it need only be reasonable to be constitutional." A-180-81. There is no support for that conclusion. The District Court relied on *Minnesota Voters All. v. Mansky*, 585 U.S. 1 (2018), but that case involved regulation of speech in the "unique context of a polling place on Election Day." *Id*. at 15. And although the opinion below sought to distinguish *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), *see* A-180 (fn. 8), Walden cited that case for its authoritative definition of what constitutes a content-based restriction on speech.  And that definition – a regulation that restricts speech "based on its communicative content" *id*. at 163 – squarely applies to the Independence Ban. The District Court therefore erred in failing to determine that the Independence Ban is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Id*.

The opinion below acknowledged that Walden cited *Bachrach v. Secretary of Com.*, 382 Mass. 268 (Mass. 1981), which invalidated a law that prohibited a candidate from using the word Independent on nominating petitions or the ballot because it was a content-based restriction of political speech. A-179-80. Although the District Court stated that this "case is of little help to" Walden, it did not explain that conclusion. A-180. In fact, *Bachrach* is squarely on point and its

27

analysis is entirely consistent with controlling Supreme Court precedent. In *Bachrach*, the candidate wanted to identify as Independent because it reflected his political message, but the state banned any candidate from using the word "independent" on nominating petitions or the ballot. *Id.* at 271. The Court acknowledged that the ballot was a state-devised form that was necessarily short and not ordinarily the place for "discursive statements by candidates," *id*. at 272, but held that once the state determined to allow party names on the ballot it could not manipulate its contents to protect the major parties by outlawing the word independent when that was the message on which the candidate had campaigned. *Id*. at 273-74. The Court rejected the state's argument that it was entitled to control party names as a time, place and manner regulation; instead, it applied strict scrutiny because the statute regulated "the very content of the communication and so was inherently suspect," *id*. at 276-77, and refused to credit the State's claim that it had banned the word "independent" to avoid confusion because the statute was so underinclusive. *Id*. at 278. All of that is true here.

**B.    The Independence Ban is Neither Necessary to Achieve nor Narrowly Tailored to Further any Legitimate State Interest**

There is no dispute that New York has a compelling interest in preventing voter confusion. But that is only half the battle. "The fact that the defendants' asserted interests are important in the abstract does not necessarily mean that its chosen means of regulation will in fact advance those interests." *Lerman*, 232 F.3d

at 149 (internal quotations omitted). Therefore, an election regulation cannot survive strict scrutiny unless it is narrowly tailored to serve, and in fact is necessary to advance, the state's asserted interest in preventing confusion. *Green Party of New York v. New York State Bd. of Elections*, 389 F.3d 411, 421-22 (2d Cir. 2004). The Independence Ban cannot survive such scrutiny because its sweeping restriction of political speech is not narrowly tailored to further, and in any event is not necessary to achieve, the State's legitimate goal of reducing voter confusion. The District Court identified two purported justifications for the Independence Ban. Neither is valid.

First, the District Court suggested that the Independence Ban was a reasonable effort to address "inadvertent enrollment of independent voters in an 'Independence Party.'" A-175-76. The undisputed facts refute that conclusion. This case has nothing to do with voter registration. Only persons already registered to vote can sign Walden's nominating petition; and they can do so whether they are enrolled in a Party or not. N.Y. Elec. Law § 6-138(1). And because the independent body that Walden wishes to name the Independence Party will never be a recognized Party under the Election Law, it will never appear on a voter registration form. A-24 (¶ 8). Therefore, there is not even arguably a risk of confusion during the voter registration process.

29

Second, the District Court cited the State Board's contention that the Independence Ban was justified because use of the "Independence Party" name might suggest to independent voters, *i.e.* those unenrolled in a Party, that Walden represented all of them. A-176. The District Court simply ignored what Walden's reply memorandum showed below: that this purported justification in fact is an admission that the Independence Ban prohibits Walden from using the word Independence to name his political body because using that word would "*connote an association*" with the category of independent voters. A-102 (¶15)(emphasis added). The District Court's opinion never explains how a State's ban on speech because of the message it conveys could survive scrutiny. It cannot.

The District Court did refer to Walden's argument that there was no basis to believe that any voter would be confused into thinking that the candidate of an organization that includes the word "*Party*" in its name could be confused into thinking that that candidate represented all voters not enrolled in a Party. ECF No. 15-7 (Plaintiff's Reply Memorandum in Support of Motion for Preliminary Injunction) (Pl. Reply Mem.) at 10 (citing *Washington State Grange*, 552 U.S. at 454-55 for its observation that voters are too well informed to be misled by party labels). But the District Court did not address the substance of this argument – that it is simply not credible that voters would think that the candidate of the

30

"Independence Party" spoke for all voters not enrolled in a Party; instead, it

distinguished the facts of *Washington State Grange*. A-178-79.

The District Court also failed to address the substance of Walden's argument

that the State's purported justifications cannot be taken seriously because the

Independence Ban is woefully underinclusive:

> If the State truly had an interest in preventing a candidate from using a
> label that signaled that he represented the entire category of voters not
> enrolled in or affiliated with a political party, then it would prohibit a
> candidate from using words or phrases like "Nonpartisan,"
> "Unaffiliated," or "No Party" – all of which communicate the same
> message that "Independent" and "Independence" do. That it does not
> shows that its asserted interest is a "challenge to the credulous."
> *Republican Party of Minnesota v. White*, 536 U.S. 765, 780 (2002)
> (rejecting State's assertion that it restricted judicial campaign speech
> to protect its interest in an open-minded judiciary when it permitted
> judges to engage in the same speech when not campaigning); *Reed*,
> 576 U.S. 155, 167 (2015) (refusing to credit Town's purported interest
> in protecting aesthetics by banning certain signs because it permitted
> other signs that created the same problem).

ECF No. 15-7 (Pl. Reply Mem.) at 10. Instead, the District Court suggested that if

the Independence Ban also prohibited the use of these synonyms for independence

it would be overbroad. A-177 (fn. 7). But that misses the point. Whatever standard

of review applies, when a State's purported justification for the regulation of

speech is so plainly underinclusive, it cannot be taken seriously. And the District

Court's suggestion that Walden could just abandon the "Independence" name he

wants petition-signers to select, and use one of "the litany of words that have the

31

same meaning as 'Independence,'" *id*., ignores that when core political speech is involved, "the First Amendment protects [Walden's] right not only to advocate [his] cause but also to select what [he] believe[s] to be the most effective means for so doing." *Meyer*, 486 U.S. at 424.

In any event, even assuming *arguendo* both that the *Anderson-Burdick* framework applied and that the content-based restriction on the name of a political body did not impose a severe burden, a law that more than trivially burdens associational and expressive rights is not justified unless "the State's asserted regulatory interests [are] sufficiently weighty to justify the limitation imposed" on those rights. *Timmons*, 520 U.S. at 364 (internal quotation omitted). In other words, "when a state election law 'imposes only reasonable, nondiscriminatory restrictions' upon First and Fourteenth Amendment rights, then 'the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Lerman*, 232 F.3d at 145 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).

The Independence Ban cannot survive even this relaxed scrutiny because it is neither a reasonable nor nondiscriminatory regulation. Absent any real risk of confusion, it is unreasonable to impose a flat ban that singles out the words Independent or Independence in a political body's name when those terms were commonly used for decades in New York elections without any sign of confusion. *See* A-50 (¶ 23). If there were a risk of confusion regarding voter registration –

32

although, as explained above, there could not be here – the reasonable tack would

be to make the registration process even clearer. *See Green Party*, 389 F.3d at 422.

Moreover, the Independence Ban is discriminatory because, by definition, it will be

applied only against minor parties seeking the challenge the Major Party duopoly.

*See Anderson v. Celebrezze*, 460 U.S. 780, 793-94 (1983) ("A burden that falls

unequally on new or small political parties or on independent candidates impinges,

by its very nature, on associational choices protected by the First Amendment. It

discriminates against those candidates and – of particular importance – against

those voters whose political preferences lie outside the existing political parties.");

*see also Bachrach*, 382 Mass. at 281 (noting the "'grave risks in legislation,

enacted by incumbents of the major political parties, which distinctly

disadvantages minor parties or independent candidates.'") (quoting *Buckley v.

Valeo*, 424 U.S. 1, 251 (1976) (Burger, C.J., concurring in part and dissenting in

part)).

**II**. **Plaintiff Will be Irreparably Harmed Absent an Injunction, and the Balance of Equities and Public Interest Decidedly Favor Granting that Relief**

The District Court correctly determined that "when a plaintiff's First

Amendment right has been violated, particularly the right to engage in political

speech, 'the irreparable harm requirement for the issuance of a preliminary

injunction has been satisfied.'" A-169 (quoting *Green Party,* 389 F.3d at 418).

33

Because Walden has shown that his First Amendment rights are being violated, *see* Point I, *supra*, he has established irreparable injury. *See also New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) ("'The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable'") (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir.2009)).

In cases in which government actors are parties, the balance-of-equities and public-interest analyses merge. *Anderson v. Sutton*, No. 24-cv-02224 (DG), 2024 WL 4050277 at * 14 (E.D.N.Y. September 3, 2024) (internal quotation omitted). In any event, both factors weigh heavily in Walden's favor. The equities tilt decidedly in favor of Walden. He seeks nothing more than to restore the status quo as it existed before the Legislature decided in 2022 to impose the Independence Ban, so that he and his supporters can express their political message by using the name Independence Party. Granting relief would not cause Defendants-Appellees, or voters, any hardship. State and City elections officials have routinely administered elections in which a Party or an independent body ran under a name using the word Independence or Independent in its name, apparently without issue. *See* A-50 (¶ 23). And no relief granted here will have any effect on voter registration, the sole area of purported concern to the Legislature that enacted the Independence Ban.

Preliminarily enjoining enforcement of the Independence Ban against

34

Walden will protect his First Amendment rights. *See* Point I, *supra*. And securing

First Amendment rights is in the public interest. *Sutton*, 2024 WL 4050277 at *14.

Accordingly, the District Court should have issued the preliminary injunction.

## CONCLUSION

Walden respectfully requests that this Court reverse the decision below, and

order the District Court forthwith to issue an order enjoining Defendants-Appellees

from enforcing the Independence Ban against him.

Dated:  April 7, 2025
     New York, New York

                              By:   /s/ John R. Cuti
                                      John R. Cuti

                              CUTI FRISCH PLLC
                              40 Fulton Street, 17th Fl.
                              New York, New York 10038
                              (212) 285-8000
                              *Attorneys for Appellant*

**Certificate of Compliance Pursuant to Fed. R. App. P. 32(a)(7)**

1.     This document complies with Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,439 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

/s/ John R. Cuti<br>
*Attorney for Appellant*

Dated:  April 7, 2025
         New York, New York