# 25-764

## United States Court of Appeals for the Second Circuit

---

JIM WALDEN,

*Plaintiff-Appellant,*

v.

PETER S. KOSINSKI, HENRY T. BERGER, ESSMA BAGNUOLA, ANTHONY J. CASALE, KRISTEN ZEBROWSKI STAVISKY, RAYMOND J. RILEY, NEW YORK CITY BOARD OF ELECTIONS,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the Eastern District of New York

---

## BRIEF FOR STATE APPELLEES

---

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
DANIEL S. MAGY
  *Assistant Solicitor General*
    *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for State Appellees
28 Liberty Street
New York, New York 10005
(212) 416-6073

Dated: April 14, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT ............................................................... 1

ISSUES PRESENTED ........................................................................... 4

STATEMENT OF THE CASE ................................................................ 5

    A.   Statutory Framework ................................................. 5

    B.   Factual Background and Procedural History .......................... 9

    C.   The District Court's Denial of the Preliminary
         Injunction Motion................................................................ 11

STANDARD OF REVIEW..................................................................... 13

SUMMARY OF ARGUMENT ............................................................... 14

ARGUMENT ....................................................................................... 16

POINT I

WALDEN'S CLAIMS AGAINST THE STATE BOARD DEFENDANTS
ARE NOT JUSTICIABLE....................................................................... 16

    A.   Walden Lacks Standing to Sue the State Board
         Defendants. ........................................................................ 16

    B.   Walden's Claims Against the State Board Defendants
         Are Barred by Sovereign Immunity. .................................... 22

POINT II

THE DISTRICT COURT PROPERLY DENIED WALDEN'S MOTION
FOR A PRELIMINARY INJUNCTION ON THE MERITS ................................ 25

i

**Page**

A.  Walden Does Not Have a Likelihood of Success on the
Merits of His First Amendment Claim ................................... 26

   1.  The challenged naming provisions do not impose
a severe burden on First Amendment rights. ................. 28

   2.  The minimal burden imposed by the challenged
naming provisions is justified by the State's interest
in preventing voter confusion. ......................................... 36

B.  Walden Has Not Satisfied the Remaining Preliminary
Injunction Requirements. ....................................................... 38

CONCLUSION ........................................................................................ 41

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*281 Care Comm. v. Arneson,*
766 F.3d 774 (8th Cir. 2014).......................................................24-25

*Anderson v. Celebrezze,*
460 U.S. 780 (1983)....................................................................3, 26

*Bachrach v. Secretary of Commonwealth,*
382 Mass. 268, 415 N.E.2d 832 (1981) ...............................................31

*Bennett v. Spear,*
520 U.S. 154 (1997)........................................................................20

*Buckley v. American Const. L. Found., Inc.,*
525 U.S. 182 (1999)........................................................................34

*Burdick v. Takushi,*
504 U.S. 428 (1992)................................................... 3, 12, 26-27, 36

*Burson v. Freeman,*
504 U.S. 191 (1992)........................................................................36

*California v. Texas,*
593 U.S. 659 (2021)........................................................................19

*Chamness v. Bowen,*
722 F.3d 1110 (9th Cir. 2013)...........................................................30

*City of S. Miami v. Governor,*
65 F.4th 631 (11th Cir. 2023) ...........................................................21

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013).................................................................18, 20

*Copeland v. Vance,*
893 F.3d 101 (2d Cir. 2018) .............................................................24

iii

| Cases | Page(s) |
|---|---|

*Democratic-Republican Org. of N.J. v. Guadagno,*
  900 F. Supp. 2d 447 (D.N.J.) ............................................................... 31

*Elias Bochner, 287 7th Avenue Realty LLC v. City of New York,*
  118 F.4th 505 (2d Cir. 2024) ........................................................ 18-20

*Ex parte Young,*
  209 U.S. 123 (1908) ...................................................................... 3, 23

*Food & Drug Admin. v. Alliance for Hippocratic Med.,*
  602 U.S. 367 (2024) ............................................................................ 18

*Green Party of N.Y. State v. New York State Bd. of Elections,*
  389 F.3d 411 (2d Cir. 2004) ............................................................... 26

*Haaland v. Brackeen,*
  599 U.S. 255 (2023) ............................................................................ 19

*Hendrickson v. AFSCME Council 18,*
  992 F.3d 950 (10th Cir. 2021) ........................................................... 24

*In re Dairy Mart Convenience Stores, Inc.,*
  411 F.3d 367 (2d Cir. 2005) ............................................................... 23

*Jacobson v. Florida Sec'y of State,*
  974 F.3d 1236 (11th Cir. 2020) .......................................................... 22

*Lacewell v. Office of Comptroller of Currency,*
  999 F.3d 130 (2d Cir. 2021) ............................................................... 13

*Lerman v. Board of Elections in the City of N.Y.,*
  232 F.3d 135 (2d Cir. 2000) ............................................................... 34

*Mamot v. Board of Regents,*
  367 F. App'x 191 (2d Cir. 2010) ................................................... 22-23

*Maslow v. Board of Elections in N.Y.,*
  658 F.3d 291 (2d Cir. 2011) ............................................. 26-27, 33-34

iv

| Cases | Page(s) |
|---|---|

*Mazo v. New Jersey Sec'y of State,*
54 F.4th 124 (3d Cir. 2022) ....................................................29-33, 35

*McIntyre v. Ohio Elections Comm'n,*
514 U.S. 334 (1995)............................................................ 33

*McMillan v. New York State Bd. of Elections,*
449 F. App'x 79 (2d Cir. 2011) .......................................... 22

*Meyer v. Grant,*
486 U.S. 414 (1988)........................................................29, 34-35

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992)............................................................ 23

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984).............................................................. 22

*Price v. New York State Bd. of Elections,*
540 F.3d 101 (2d Cir. 2008) .........................................27, 36

*Quern v. Jordan,*
440 U.S. 332 (1979)............................................................ 22

*Rogers v. Petroleo Brasileiro, S.A.,*
673 F.3d 131 (2d Cir. 2012) ............................................. 13

*Rubin v. City of Santa Monica,*
308 F.3d 1008 (9th Cir. 2002)............................................ 30

*SAM Party of N.Y. v. Kosinski,*
987 F.3d 267 (2d Cir. 2021) ..................... 13, 27-28, 36, 38-40

*Schulz v. Williams,*
44 F.3d 48 (2d Cir. 1994) ............................................21, 24

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016)............................................................ 16

v

**Cases**                                                            **Page(s)**

*St. Joseph's Hosp. Health Ctr. v. American Anesthesiology of
    Syracuse, P.C.,*
    131 F.4th 102 (2d Cir. 2025) ............................................... 14

*Sussman v. Crawford,*
    488 F.3d 136 (2d Cir. 2007) ............................................... 13

*T.W. v. New York State Bd. of L. Exam'rs,*
    110 F.4th 71 (2d Cir. 2024) ............................................... 23

*Timmons v. Twin Cities Area New Party,*
    520 U.S. 351 (1997) ..................................................... 29, 38

*Whole Woman's Health v. Jackson,*
    595 U.S. 30 (2021) ........................................................ 21-23

**Statutes**

Ch. 433, 1954 N.Y. Laws 1151 ................................................ 7

Ch. 671, 2022 N.Y. Laws (LRS) ............................................. 8

28 U.S.C. § 2403(b) ......................................................... 3, 25

Elec. Law
    § 1-104 ........................................................................ 5
    § 2-124 ........................................................................ 7
    § 6-138 ..................................................................... 5-7
    § 6-140 ..................................................................... 5-6
    § 6-142 ........................................................................ 5
    § 6-144 ........................................................................ 5
    § 16-100 ...................................................................... 6

**Miscellaneous Authority**

Senate Introducer's Mem., *in* Bill Jacket for ch. 671 (2022) ........... 8-9, 37

## PRELIMINARY STATEMENT

Under New York law, political parties and other nominating bodies are subject to limited restrictions on the names they can choose to identify themselves. As relevant to this case, state law bars parties and other bodies from choosing any part of the name of an existing party or body and prohibits the use of seven terms in the party's or body's name: "American," "Empire State," "United States," "National," "New York State," "Independence," or "Independent." Otherwise, parties and other bodies can use any name that contains only English letters and is not otherwise likely to create confusion with the name of an existing party or body. Collectively, these statutory naming provisions further the State's compelling interest in preventing voter confusion while giving political organizations broad leeway in naming.

Plaintiff-appellant Jim Walden intends to run in the 2025 New York City mayoral election as the nominee of an independent body. He wishes to circulate and file nominating petitions to the New York City Board of Elections that will identify his nominating body as the "Independence Party." In this action under 42 U.S.C. § 1983, Walden challenges the restriction on the use of "Independence" in the name of a nominating

body as a purported violation of the First Amendment. Although Walden acknowledges that the New York State Board of Elections plays no role in determining the validity of his nominating petition, he sued both the City Board and officials on the State Board, seeking to enjoin them from relying on the statutory naming provisions to reject his nominating petition.[1]

The U.S. District Court for the Eastern District of New York (DeArcy Hall, J.) denied Walden's motion for a preliminary injunction, concluding that he failed to establish either a likelihood of success on the merits of his First Amendment claim or irreparable harm. This Court should affirm.

First, Walden's claims against the State Board defendants are not justiciable for two threshold reasons: (1) Walden lacks standing to sue the State Board defendants, and (2) the State Board defendants are protected by sovereign immunity. It is undisputed that the State Board is not involved in the City Board's determination of the validity of Walden's nominating petition, and the State Board has expressly disclaimed any

---

[1] This brief is filed solely on behalf of defendants-appellees Peter S. Kosinski, Henry T. Berger, Essma Bagnuola, Anthony J. Casale, Kristen Zebrowski Stavisky, and Raymond J. Riley, all of whom are sued in their official capacities as officials of the New York State Board of Elections. The City Board is separately represented.

role in enforcing the challenged naming provisions against Walden. Walden's alleged injury is therefore not traceable to the State Board defendants, nor would an injunction against the State Board defendants redress his injury. For the largely same reasons, Walden cannot rely on *Ex parte Young*, 209 U.S. 123 (1908), to avoid the State Board defendants' sovereign immunity in this § 1983 action. To be sure, Walden challenges the validity of a state law; however, that fact alone is insufficient to permit a federal court to exercise jurisdiction over state officials who will play no role in enforcing the challenged law against the plaintiff.[2]

Second, the district court correctly applied the framework established by *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992), to determine that Walden has not established a likelihood of success on the merits of his First Amendment claim

---

[2] The City Board is concededly the proper defendant to this lawsuit, but it has taken no position on the constitutionality of the challenged law. (*See* Appendix (A.) 155.) The State Board defendants defend the constitutionality of the law and therefore request that, in the event this Court dismisses the State Board defendants as parties but nonetheless reaches the merits of Walden's First Amendment challenge, this Court consider this brief's analysis of the merits of that constitutional challenge as a brief of the New York State Attorney General as intervenor pursuant to 28 U.S.C. § 2403(b).

or irreparable harm warranting preliminary injunctive relief. The challenged naming provisions are reasonable, nondiscriminatory, and minor burdens on speech that are amply justified by the State's interest in preventing voter confusion. Contrary to Walden's arguments, the challenged provisions do not restrict core political speech and are therefore not subject to review under strict scrutiny.

## ISSUES PRESENTED

1. Whether Walden's claims against the State Board defendants are barred by lack of Article III standing or sovereign immunity.

2. Whether the district court correctly denied Walden's motion for a preliminary injunction based on his failure to establish a likelihood of success on the merits of his First Amendment claim, or to meet the other preliminary injunction factors.

## STATEMENT OF THE CASE

**A.    Statutory Framework**

In New York, a candidate for public office can obtain access to the general election ballot either as the nominee of a "party" or as the nominee of an "independent body." (A. 9, 46.) A party is an organization whose candidates received a certain percentage or number of votes at the preceding elections for governor or for president. Elec. Law § 1-104(3). There are currently four parties in New York: Democratic, Republican, Conservative, and Working Families. (A. 47.) An independent body is any other organization that nominates candidates for election but is not a party. Elec. Law § 1-104(12).

To run as the nominee of an independent body, a candidate must obtain a prescribed number of signatures on an independent nominating petition and file the petition with the board of elections responsible for administering the election. *See* Elec. Law §§ 6-138 to -144. For the 2025 New York City mayoral election, the board responsible for administering the election is the City Board. *See* Elec. Law § 6-144. For the current election cycle, the period to circulate nominating petitions for signatures

5

runs from April 15 to May 27, 2025, and the period file the petitions with the City Board runs from May 20 to May 27, 2025. (A. 98.)

The City Board is alone responsible for determining the validity of nominating petitions for candidates for New York City Mayor. (A. 9, 102-103.) The State Board plays no role in determining whether an independent nominating petition for a candidate for New York City Mayor meets the requirements of the state Election Law. (A. 102-103.) Challenges to the City Board's acceptance or rejection of an independent nominating petition can be filed in the Supreme Court of New York in a summary proceeding. *See* Elec. Law § 16-100. The State Board would not be a party to such a proceeding. (A. 103.)

State law specifies the requirements for an independent nominating petition, which is a form document.[3] *See* Elec. Law § 6-140. As relevant here, the first paragraph of the petition must state the name of the independent body circulating the petition. *See id.* §§ 6-138(3)(a), 6-140(1)(a).

---

[3] A sample independent nominating petition can be found on the New York State Board of Elections website. See https://elections.ny.gov/system/files/documents/2023/10/sample-independentnominatingpetition.pdf.

6

If the petition is accepted by the appropriate board of elections, this name becomes the ballot label for that candidate on the official ballot. (*See* A. 99.)

To prevent voter confusion, New York law limits the words that an independent body can choose to identify itself in nominating petitions and ballots. The name of an independent body cannot include any part of the name of an existing party or a name that otherwise would create a possibility of confusion with the name of an existing party. Elec. Law § 6-138(3)(a). An independent body also cannot choose a name that has already been selected by an earlier filed nominating petition for the same office. *Id.*

In addition to those restrictions, independent bodies are also subject to the naming restrictions that the Election Law imposes on parties. *See id.* § 6-138(3)(f). Among other restrictions, parties and independent bodies are prohibited from using in their names the words "American," "Empire State," "United States," "National," "New York State," "Independence," or "Independent." *Id.* §§ 2-124(2) (naming restrictions for parties), 6-138(3)(f) (incorporating naming restrictions on parties to independent bodies). The first five terms on this list were added to the Election Law in 1954, *see* Ch. 433, 1954 N.Y. Laws 1151, 1151, and are intended to

prevent voter confusion by minimizing the impression of official imprima-
tur (A. 100). In 2022, the Legislature added the terms "Independence"
and "Independent" to address a different source of voter confusion. *See*
Ch. 671, 2022 N.Y. Laws (LRS); Senate Introducer's Mem., *in* Bill Jacket
for ch. 671 (2022), at 6.

In common parlance, New York voters who are not affiliated with
an existing political party are referred to as "independents" or "indepen-
dent voters." (*See* A. 100-101.) For example, New York's current voter
registration form allows individuals to either enroll in a party or state
that they "do not want to enroll in any political party and wish to be an
independent voter." (A. 101, 105.) The Legislature was therefore concerned
that allowing a party or independent body to use the words "Indepen-
dence" and "Independent" in their names could lead unaffiliated voters
to incorrectly believe that, for example, the candidate for an "Indepen-
dence Party" or "Independent Party" is the representative for all unaffil-
iated voters. (*See* A. 101-102.) In addition, the Legislature was concerned
that newly registering voters who wished to designate themselves as
independent would inadvertently enroll themselves in the Independence

8

Party, a now-defunct party that existed from 1991 to 2020.[4] *See* Senate Introducer's Mem., *in* Bill Jacket, *supra*, at 6. (*See* A. 102, 121-123; *see also* A. 65-71.)

## B.   Factual Background and Procedural History

Walden is a New York resident who wishes to run for mayor of New York City in the 2025 general election without seeking the nomination of an existing political party. (A. 7-9.) Instead, Walden wishes to become the nominee of an independent body that he would like to name the "Independence Party" in order to express a "desire for political change" and "a viable alternative to the major political parties." (A. 7.)

In January 2025, Walden filed a complaint against the City Board and numerous State Board officials in the U.S. District Court for the Eastern District of New York seeking an injunction to prevent defendants from rejecting his nominating petition for using the word "Independence" in the name of the nominating body. (*See* A. 8.) The complaint asserts that the prohibition of the word "Independence" under state law unlaw-

---

[4] Walden is not affiliated with the now-defunct Independence Party. (*See* A. 15, 24, 47-49.)

9

fully burdens Walden's First Amendment rights. (A. 8.) Walden also moved for a preliminary injunction. (*See* Pl.'s Mot. for Prelim. Inj. (Jan. 15, 2025), EDNY ECF No. 15-1.)

The State Board defendants opposed Walden's motion on numerous grounds, including that (i) Walden failed to identify an injury traceable to the State Board defendants or redressable by an injunction against the State Board defendants; (ii) the claims against the State Board defendants are barred by sovereign immunity; (iii) Walden is unlikely to succeed on the merits of his constitutional challenge; and (iv) Walden has failed to make a sufficient showing with respect to the remaining preliminary injunction factors. (*See* State Defs.' Mem. of Law in Opp'n (Jan. 31, 2025), EDNY ECF No. 15-5.) The City Board filed a letter stating that it was "not taking a position" on Walden's motion while acknowledging that it would be bound by the court's determination of the action. (A. 20.)

In March 2025, the district court (DeArcy Hall, J.) held a hearing on Walden's motion. At the hearing, the State Board defendants reiterated that the City Board was alone responsible for determining the validity of Walden's nominating petition and that the State Board defendants would not enforce the challenged naming provisions against either the City

10

Board or Walden. (*See* A. 145-146, 149-150; *see also* EDNY ECF No. 15-5 at 2, 8.) Following the hearing, the City Board submitted a letter agreeing that it was properly named as a defendant in the action and stating that it interpreted state law to prohibit the use of "Independence" in the name of a nominating body, but it took no position on the constitutionality of the challenged laws. (A. 155.)

## C.   The District Court's Denial of the Preliminary Injunction Motion

On April 1, 2025, the district court entered a minute order denying Walden's motion for a preliminary judgment (A. 5), and on April 5, the court entered a memorandum opinion and order explaining its reasoning (A. 6, 160).

First, the district court recognized that the City Board is solely responsible for administrating the mayoral election, including with respect to the review of nominating petitions. (A. 168.) Nevertheless, the court held that the City Board's application of the challenged naming provisions against Walden would be traceable to the State Board defendants because of the State Board's "general enforcement powers" under the Election Law. (A. 168-169.)

11

Second, the district court concluded that Walden was not entitled to a preliminary injunction because he failed to establish a likelihood of success on his First Amendment challenge. In assessing Walden's claim, the court applied the *Anderson-Burdick* framework, under which "the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. The court held that the challenged provisions were not subject to strict scrutiny, because they do not restrict Walden from disseminating his political message or encumber his access to the ballot. (*See* A. 173-175.) The court also rejected Walden's argument that the challenged provisions are unconstitutional as content-based restrictions on speech. (A. 179-180.) Finally, the court held that the minimal burdens imposed by the challenged provisions were justified by the State's compelling interest in preventing voter confusion. (A. 175-179.)

For the same reasons, the court concluded that Walden failed to establish irreparable harm. (A. 170, 181.) The court declined to address whether the balance of equities or the public interest supported an injunction given Walden's failure to establish the other factors. (*See* A. 181.)

12

## STANDARD OF REVIEW

This Court reviews questions of standing and sovereign immunity de novo. *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 140 (2d Cir. 2021) (standing); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) (sovereign immunity).

A preliminary injunction is an "extraordinary and drastic remedy" that should not be granted unless the movant, "by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (quotation marks omitted). A party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) irreparable harm in the absence of an injunction, (3) that the injunction is in the public interest, and (4) that the balance of equities supports an injunction. *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273-74 (2d Cir. 2021). Where a preliminary injunction "will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," the movant must satisfy a heightened standard, which requires a "clear" or "substantial" likelihood of success. *Sussman*, 488 F.3d at 140 (quotation marks omitted).

13

This Court reviews the denial of a preliminary injunction motion for abuse of discretion. *St. Joseph's Hosp. Health Ctr. v. American Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025). A district court abuses its discretion when "it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Id.* (quotation marks omitted).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's denial of Walden's motion for a preliminary injunction.

**I.** Walden is not entitled to a preliminary injunction as to the State Board defendants because he lacks standing to sue those defendants and because those defendants are entitled to sovereign immunity.

As Walden concedes, the City Board is the sole entity responsible for determining the validity of his nominating petition for the mayoral election. Accordingly, Walden has not alleged any injury that is traceable to actions by the State Board defendants. For the same reasons, Walden cannot show that an injunction against the State Board defendants would redress his alleged injuries. An order enjoining the State Board defen-

14

dants from relying on the challenged provisions to reject Walden's petition is functionally meaningless because the State Board has no role in evaluating the validity of his petition.

Walden's claims against the State Board defendants are also barred by sovereign immunity. *Ex parte Young* does not apply here because the State Board defendants have no connection to the threatened enforcement of the challenged provisions against Walden. The federal courts therefore have no basis to assert jurisdiction over these state officials.

**II.** The district court correctly determined that Walden failed to meet the requirements for a preliminary injunction. Because States have broad authority to regulate state and local elections, election laws that place minimal burdens on speech satisfy the First Amendment when they further legitimate state interests. Here, the challenged naming provisions are generally applicable, nondiscriminatory restrictions passed by the Legislature to prevent voter confusion. The naming provisions place a limited burden on candidates' ability to identify their organizations on election documents such as ballots or nominating petitions and do not restrict candidates from communicating their political platform, their policy commitments, or any other messages to the public. Although

15

Walden cannot use the term "Independence" in the name of his nominating body, he and his supporters remain free at all times to communicate messages of independence to voters.

## ARGUMENT

### POINT I

#### WALDEN'S CLAIMS AGAINST THE STATE BOARD DEFENDANTS ARE NOT JUSTICIABLE

As an initial matter, the district court erred in concluding that Walden's claims against the State Board defendants are justiciable. Accordingly, this Court should affirm the denial of the preliminary injunction as to the State Board defendants on the alternative ground that Walden's claims against these defendants are not justiciable.

### A.   Walden Lacks Standing to Sue the State Board Defendants.

To have Article III standing to sue the State Board defendants, Walden must show that: (1) he "suffered an injury in fact"; (2) his injury is "fairly traceable" to the State Board defendants; and (3) his injury "would likely be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). Here, Walden lacks standing to sue

16

the State Board defendants because he has failed to show that his alleged injury (the anticipated rejection of his nominating petition) is traceable to any actions of the State Board defendants or that an injunction against the State Board defendants would redress that injury.

There is no dispute that the City Board is the sole body responsible for determining the validity of Walden's nominating petition for the mayoral election, a task that includes evaluating whether the petition complies with the challenged naming provisions. (*See* A. 9, 102-103.) The complaint does not allege that the State Board or any of its officials play a role in that process. Moreover, the State Board defendants have expressly represented, on multiple occasions, that the State Board is not involved in the City Board's assessment of nominating petitions and that the State Board will not enforce the challenged naming provisions against the City Board or Walden. (EDNY ECF No. 15-5 at 2, 3, 8; A. 5, 145-146, 149-150.)

Under these circumstances, Walden cannot establish that his alleged injury is traceable to the State Board defendants. While Walden may face threatened enforcement of the challenged provisions against his nominating petition, it is the City Board, not the State Board, that is the

17

source of that threat. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (standing requires proof that "*the defendant's* actual action has caused the substantial risk of harm" (emphasis added)).

This Court's decision in *Elias Bochner, 287 7th Avenue Realty LLC v. City of New York*, 118 F.4th 505 (2d Cir. 2024), is directly on point. There, a group of landlords sued New York City to enjoin it from enforcing city laws rendering certain commercial lease provisions unenforceable. Although the City had general authority to enforce violations of the law, the City "disavowed any intent to enforce" the law against the plaintiffs. *Id.* at 524-25. Considering that disavowal, the Court held that the plaintiffs had failed to establish standing. *Id.* at 525. And even if the City had not expressly disavowed its intent, the Court concluded that the City's general authority to enforce the law was insufficient by itself to support standing absent evidence that the City had or would enforce the laws against the plaintiffs. *Id.* at 524.

Walden also cannot show that an injunction against the State Board will redress his injury. *See Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380 (2024) ("[C]ausation and redress-ability [] are often flip sides of the same coin."). In assessing redress-

18

ability, courts "consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (quotation marks omitted). It is well settled that remedies "operate with respect to specific parties." *Id.* at 672 (quotation marks omitted); *accord Elias Bochner*, 118 F.4th at 523 (quoting *California*). Accordingly, an injunction against the State Board defendants would not bind the City Board, nor would it ensure that the City Board take any particular action with respect to Walden's nominating petition. Although the City Board might voluntarily decline to enforce the provisions against Walden if the State Board defendants are enjoined from doing so, standing requires that a court's judgment, not just its persuasive effect on nonenjoined parties, redress the plaintiff's injury. *See Haaland v. Brackeen*, 599 U.S. 255, 294 (2023); *Elias Bochner*, 118 F.4th at 523 ("likely persuasive effect" of federal court judgment did not establish redressability).

In the decision below, the district court correctly acknowledged that the State Board plays no role in determining the validity of Walden's nominating petition but erroneously concluded that Walden had established standing because the State Board has "general enforcement powers

19

under New York election law." (A. 168.) A government entity's general enforcement authority is not sufficient to establish standing in the absence of evidence of any actual or threatened exercise of that authority against the plaintiff. *See Clapper*, 568 U.S. at 414; *Elias Bochner*, 118 F.4th at 524. As this Court has recognized, that conclusion is particularly true when the government entity has disavowed enforcement against the plaintiff, as the State Board defendants have done with respect to Walden here. *See Elias Bochner*, 118 F.4th at 525.

Contrary to the district court's conclusion (A. 167), this case also does not present a situation where a defendant has engaged in conduct that has had a "determinative or coercive effect upon the action" of a third-party that directly caused the plaintiff's injury. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997). Indeed, the State Board defendants will not enforce its interpretation of the challenged naming provisions against the City Board. The district court's speculation that the State Board could one day threaten enforcement to coerce the City Board is not sufficient to establish standing. *See Elias Bochner*, 118 F.4th at 524-25. Nor does the City Board's statement that it "will be obligated to apply [the] law as written" demonstrate coercion by the State Board. (*See* A. 169 (quotation

20

marks omitted).) Local governments are always obligated to follow state law. That obligation does not mean that a plaintiff has standing to sue a state agency or official every time it believes that a local government's application of state law would be unconstitutional. *See City of S. Miami v. Governor*, 65 F.4th 631, 641 (11th Cir. 2023).

Lastly, the district court erred in relying on *Schulz v. Williams*, 44 F.3d 48 (2d Cir. 1994), to support its finding of standing. (*See* A. 167-168.) *Schulz* did not address whether the plaintiffs' injuries in that case were traceable to the State Board or redressable by injunctive relief against State Board officials. The Court observed, in a footnote, only that the State Board defendants there had a sufficient connection to the challenged law for the plaintiffs to use an *Ex parte Young* action to avoid sovereign immunity.[5] *See Schulz*, 44 F.3d at 61 n.13. The *Ex parte Young* inquiry is not the same as the standing inquiry—for one, an *Ex parte Young* suit avoids sovereign immunity if the named state official has enforcement authority under the challenged law. *See, e.g.*, *Whole Woman's*

---

[5] In *Schulz*, the State Board defendants did not participate in the appeal of the district court's order and therefore did not brief the issue of sovereign immunity to this Court. *See* 44 F.3d at 51.

*Health v. Jackson*, 595 U.S. 30, 47 (2021); *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020). But as explained above (at 17-18), enforcement authority is *not* sufficient to establish standing against a state official.

In any event, as explained below in Point I.B, because the State Board defendants have disclaimed an intent to enforce the challenged naming provisions against Walden in this as-applied challenge, *Schulz* is distinguishable from this case even as to its analysis of *Ex parte Young*.

## B.  Walden's Claims Against the State Board Defendants Are Barred by Sovereign Immunity.

As an arm of the State, the State Board and its officials are protected under the Eleventh Amendment against suits in federal court "regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). *See McMillan v. New York State Bd. of Elections*, 449 F. App'x 79, 80 (2d Cir. 2011) (claims against State Board barred by sovereign immunity).

Because 42 U.S.C. § 1983 does not abrogate New York's sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 341-42 (1979), and New York has not consented to § 1983 suits in federal court, *Mamot v. Board*

22

*of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010), Walden's claim against the State Board defendants can proceed only if he satisfies the requirements for avoiding sovereign immunity with a suit under *Ex parte Young*.

Under *Ex parte Young*, sovereign immunity does not bar suits against state officials that seek prospective relief to prevent an ongoing violation of a federal law. *E.g.*, *T.W. v. New York State Bd. of L. Exam'rs*, 110 F.4th 71, 91 (2d Cir. 2024), *pet. for cert. filed*, No. 24-714 (Dec. 31, 2024). But for an *Ex parte Young* suit to be available, the defendant state official "must have some connection with the enforcement" of the challenged action against the plaintiff. *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (quotation marks omitted).

Here, the State Board defendants do not have the requisite connection for purposes of *Ex parte Young* because they have not "threaten[ed]" nor are "about to commence" proceedings to enforce the challenged law against Walden. 209 U.S. at 156; *accord Whole Woman's Health*, 595 U.S. at 47; *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). To satisfy *Ex parte Young*, a plaintiff must show that the state official has both "a particular duty to enforce the statute in question *and* a demonstrated willingness to exercise that duty" against the plaintiff.

23

*Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (emphasis added; quotations marks omitted). Where, as here, state officials have disclaimed an intention to enforce the challenged law against the plaintiff, *Ex parte Young* does not apply. *See 281 Care Comm. v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014).

In the decision below, the district court did not expressly address the State Board defendants' sovereign immunity, although it appeared to have implicitly rejected the argument by concluding that the State Board defendants were proper parties under *Schulz* when considering standing. (*See* A. 167-169.) *Schulz* is again inapposite. The constitutional challenge in *Schulz* was a facial one, and the plaintiffs demonstrated a sufficient connection for that facial challenge by showing that the State Board defendants had general enforcement authority of the statute at issue. *See Schulz,* 44 F.3d at 60-61 & n.13. Here, by contrast, Walden brings an as-applied challenge, and he therefore must show that the State Board defendants have demonstrated a willingness to enforce the laws against him personally. *See Copeland v. Vance*, 893 F.3d 101, 112 (2d Cir. 2018) ("[A] prospective as-applied challenge seeks to prove that a statute cannot constitutionally be applied to a specific course of conduct that the chal-

24

lenger intends to follow."). Because the City Board will be the body enforcing the challenged naming provisions against Walden, and the State Board defendants have disclaimed an intent to enforce the provisions against Walden, Walden cannot meet that standard here. *See 281 Care Comm.*, 766 F.3d at 797.

## POINT II

### THE DISTRICT COURT PROPERLY DENIED WALDEN'S MOTION FOR A PRELIMINARY INJUNCTION ON THE MERITS

Although Walden's claims against the State Board defendants are not justiciable, the State Board—and the New York State Attorney General—have a strong interest in defending the constitutionality of the state laws at issue. Moreover, Walden undisputedly has a justiciable claim against the City Board, which has declined to take a position on the merits of his constitutional challenge. Accordingly, if the Court dismisses the State Board defendants as parties but nonetheless reaches the merits of Walden's First Amendment challenge, the State Board defendants respectfully request that this Court consider the argument on the merits in this brief as a brief on behalf of the Attorney General as intervenor pursuant to 28 U.S.C. § 2403(b).

25

The district court correctly denied Walden's motion for a preliminary injunction. First, the court properly applied the *Anderson-Burdick* framework to conclude that Walden does not have a likelihood of success on the merits of his First Amendment claim. Second, Walden failed to show that he would suffer irreparable harm in the absence of an injunction or to satisfy the equitable factors necessary to obtain preliminary injunctive relief.

## A.   Walden Does Not Have a Likelihood of Success on the Merits of His First Amendment Claim.

States have broad authority to pass laws regulating state and local elections, including laws governing both voters and candidates for office. *See Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Therefore, although all election laws "impose at least some burden on the expressive and associational rights protected by the First Amendment," *Maslow v. Board of Elections in N.Y.*, 658 F.3d 291, 296 (2d Cir. 2011), the Supreme Court has declined to subject all election laws facing First Amendment challenges to strict scrutiny. *See Green Party of N.Y. State v. New York State Bd. of Elections*, 389 F.3d 411, 419 (2d Cir. 2004); *accord Burdick*, 504 U.S. at 433. Instead, the

Supreme Court has directed courts to apply what has become known as the *Anderson-Burdick* framework.

Under the *Anderson-Burdick* framework, a court reviewing the constitutionality of a challenged election law must balance the State's broad authority to regulate elections with the First Amendment rights of voters and candidates for office. *See SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 274 (2d Cir. 2021); *Maslow*, 658 F.3d at 296. In balancing these interests, the "rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens" First Amendment rights. *Burdick*, 504 U.S. at 434. If the burden on First Amendment rights is "severe," then the challenged law must satisfy strict scrutiny. *SAM Party of N.Y.*, 987 F.3d at 274 (quotation marks omitted). If the burden is "minor, but non-trivial," *Price v. New York State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008), then the State's "important regulatory interests are generally sufficient to justify the restrictions," *Burdick*, 504 U.S. at 434 (quotation marks omitted). And if the burden is "trivial," then rational basis review applies. *Maslow*, 658 F.3d at 296.

27

As the district court correctly determined, the naming provisions challenged here do not impose a severe burden on Walden's or his supporters' First Amendment rights and are instead reasonable limitations on speech justified by the State's compelling interest in preventing voter confusion. (A. 171-181.)

### 1. The challenged naming provisions do not impose a severe burden on First Amendment rights.

This Court has identified three categories of restrictions that impose severe burdens on First Amendment rights under *Anderson-Burdick*: (1) "regulations meddling in a political party's internal affairs"; (2) "regulations restricting the core associational activities of the party or its members," including laws that regulate "core political speech"; and (3) "regulations that make it virtually impossible for minor parties to qualify for the ballot." *SAM Party of N.Y.*, 987 F.3d at 275 & n.3 (quotation marks omitted). By contrast, election laws that impose only "reasonable" and "nondiscriminatory" restrictions do not create severe burdens subject to strict scrutiny. *See id.* at 274 (quotation marks omitted).

In this case, there is no assertion that the challenged naming provisions implicate the first or third category of severe burdens. Instead,

28

Walden contends that the prohibition on the use of "Independence" in the name of a nominating body regulates "core political speech." Br. at 19. The district court correctly rejected this argument.

Election laws infringe on core political speech only in limited circumstances, such as when the laws restrict a candidate's ability to express "a desire for political change" and "the merits of the proposed change." *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988); *see Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 142-43 (3d Cir. 2022). But courts have recognized that generally applicable laws restricting the label that a candidate can use to identify itself on election documents do not infringe on the organization's ability to interact with voters and do not require strict scrutiny. For example, as the Supreme Court held in *Timmons v. Twin Cities Area New Party*, States can restrict the labels that candidates can use to identify themselves on ballots without satisfying strict scrutiny. *See* 520 U.S. 351, 362-63 (1997). Although these ballot restrictions burden in one way a "party's ability to send a message to the voters," the burden is only "slight[]" because "[t]he party retains great latitude in its ability to communicate ideas to voters and candidates." *Id.* at 363.

Other federal courts of appeal have routinely rejected First Amendment challenges to state laws restricting labels or slogans that can be displayed on ballots. In *Chamness v. Bowen*, for example, the Ninth Circuit upheld a law prohibiting a candidate from labeling himself as "Independent" on the ballot and requiring him to either state he had "No Party Preference" or leave the space blank on the ballot. 722 F.3d 1110, 1113 (9th Cir. 2013). The court reasoned that the law "imposes only a slight burden on speech," and "does not allow *any* candidates to term themselves 'Independents.'" *Id.* at 1118. The same court reached a similar conclusion in *Rubin v. City of Santa Monica*, where it upheld a law prohibiting a candidate from using the word "activist" when listing his occupation on the ballot. 308 F.3d 1008, 1014-17 (9th Cir. 2002). In *Mazo*, the Third Circuit upheld a law that restricted candidates from using certain words in ballot slogans without permission. 54 F.4th at 131-32. The court found that the law did not impose a severe burden on First Amendment rights because the restriction was nondiscriminatory and

30

left open ample alternatives for speech.[6] *See id.* at 151-52; *see also Democratic-Republican Org. of N.J. v. Guadagno*, 900 F. Supp. 2d 447, 463 (D.N.J.), *aff'd,* 700 F.3d 130 (3d Cir. 2012).

The district court correctly concluded (*see* A. 171) that the naming provisions challenged in this case likewise impose only minimal burdens on speech. As in *Mazo*, the challenged provisions apply equally to all parties and independent bodies in the state.[7] *See* 54 F.4th at 147 ("burdens that apply to all voters, parties, or candidates" are not discriminatory). Moreover, the challenged provisions do not restrict Walden from communicating his political platform, his policy commitments, or his message of independence to voters. (A. 173.) Walden can convey these messages on his website, in the media, when he solicits donations and seeks endorsements, when he communicates directly with voters, and even when he circulates nominating petitions. (*See* A. 173-174.) Walden is also

---

[6] Walden's reliance on *Bachrach v. Secretary of Commonwealth*, 382 Mass. 268, 269-70, 415 N.E.2d 832, 833 (1981), is unavailing. *See* Br. at 27-28. *Bachrach* predates *Anderson*, *Burdick*, and *Timmons*, and is therefore inapposite.

[7] Walden's contention that the challenged naming provisions apply only to "minor parties" is meritless. Br. at 33. All parties, major or minor, and all independent bodies in New York are subject to the provisions. (*See* A. 99.)

31

free to use a "panoply of other available words, including numerous synonyms for 'independence,'" to identify his organization in his nominating petition. (A. 173.) The provisions only prohibit Walden from using the specific word "Independence" to identify his organization in the nominating petition itself and, subsequently, the ballot.

Walden's contention that the challenged provisions are nevertheless subject to strict scrutiny is meritless.

*First*, Walden is mistaken in arguing that the challenged naming provisions restrict core political speech because the provisions apply to nominating petitions in addition to ballots. *See* Br. at 21-26. Like ballots, nominating petitions are election documents that are part of the "mechanics of the electoral process." *Mazo*, 54 F.4th at 147. Indeed, nominating petitions serve as the "vehicle for obtaining access to the ballot" (A. 180), and the name of the nominating body listed on the petition is the name that is eventually used as the label for the candidate on the ballot (*see* A. 99).

Contrary to Walden's arguments (Br. at 20-22), neither the Supreme Court nor this Court have ever held that all limitations affecting election petitions restrict core political speech or require strict scrutiny. In fact,

this Court has applied *Anderson-Burdick* balancing to uphold restrictions on election petitions against First Amendment challenges. *See Maslow*, 658 F.3d at 296 (law limiting the circulators of nominating petitions to members of the candidate's own political party imposed only a trivial burden under *Anderson-Burdick*).

Although the Supreme Court and this Court have found that certain limitations on the act of circulating petitions require strict scrutiny, those cases involved severe burdens unlike the ones imposed by the challenged naming provisions here. In each of the cases Walden relies on, the laws limited the candidates' ability to circulate petitions *at all*, which restricted the candidates' access to the public.[8] In *Meyer*, the law prohibited proponents of state initiatives from paying petition circulators, which the Court held violated the First Amendment because it "limit[ed] the

---

[8] Walden also relies on *McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995), but that case did not involve circulation of nominating petitions. It instead concerned anonymous leafletting that occurred "nowhere near the ballot or any other electoral mechanism." *Mazo*, 54 F.4th at 142; *see McIntyre*, 514 U.S. at 341-42. In addition, the prohibition on anonymous leafletting in *McIntyre*, like restrictions on circulating nominating petitions, limited the leafleteer's ability to access the public by discouraging speech. *See McIntyre*, 514 U.S. at 341-42. That is not the case here.

number of voices who will convey appellees' message." 486 U.S. at 422. In *Buckley v. American Constitution Law Foundation, Inc.*, the law required initiative petition circulators to wear identification badges, which "discourage[d] participation in the petition circulation process." 525 U.S. 182, 198-200 (1999). And in *Lerman v. Board of Elections in the City of New York*, this Court struck down the challenged law because it "dramatically reduced the number of potential petition circulators available to advance [the plaintiff's] political message." 232 F.3d 135, 147 (2d Cir. 2000).

The laws at issue in these cases were not, as Walden claims, "indirect restrictions" on speech. Br. at 21. As the courts explained, the laws directly limited speech because they restricted the plaintiffs' access to the very voters they needed to persuade to get their proposals or candidates on the ballot.[9] That is, the laws restricted core political speech because they limited "the number of voices who will convey [the plaintiffs'] message" and the "size of the audience" the plaintiffs could reach. *Meyer*,

---

[9] As this Court has recognized, however, not all restrictions on the act of circulating election petitions impose severe burdens. *See Maslow*, 658 F.3d at 298.

486 U.S. at 422-23. Unlike the laws in those cases, the naming provisions challenged in this case do not burden Walden's ability to circulate petitions, restrict his access to voters, or restrict his access to the ballot. (*See* A. 174-175.)

*Second*, there is also no merit to Walden's argument that the Court should bypass *Anderson-Burdick* entirely and apply strict scrutiny because the naming provisions are content-based restrictions on speech. *See* Br. at 26-28. Although the content-based nature of a restriction can be a factor in determining whether the restriction is severe, it does not remove the restriction from the *Anderson-Burdick* framework entirely. *See Mazo*, 54 F.4th at 147. Even under *Anderson-Burdick*, content-based limitations comply with the First Amendment where, as here, they are nondiscriminatory and viewpoint-neutral.[10] *Id.* at 147 & n.39. As explained (*supra* at 31-32), the challenged naming provisions are generally applicable to all political organizations and do not prohibit

---

[10] In addition, as the district court concluded, the challenged provisions would not be subject to strict scrutiny in any event because nominating petitions and ballots are non-public forums. (*See* A. 180-81.)

35

Walden from disseminating any political message, including his political message of independence, to voters.

### 2. The minimal burden imposed by the challenged naming provisions is justified by the State's interest in preventing voter confusion.

Because the challenged naming provisions imposes minimal burdens on speech, the First Amendment requires only that the State show that its "legitimate interests . . . outweigh the limited burden." *Burdick*, 504 U.S. at 440. Under this test, "the State's reasonable and nondiscriminatory restrictions will generally be sufficient to uphold the statute if they serve important state interests." *Price*, 540 F.3d at 109. This standard is "quite deferential" and does not require "elaborate, empirical verification of the weightiness of the State's asserted justifications." *Id.* (quotation marks omitted). The State need only "set forth a coherent account" of why the challenged law supports the asserted interest. *SAM Party of N.Y.*, 987 F.3d at 278.

As the district court correctly found (A. 175-176, 179), the naming provisions at issue here serve New York's interest in preventing voter confusion, which the Supreme Court has recognized as compelling. *See Burson v. Freeman*, 504 U.S. 191, 199 (1992). As explained above (at 8-9),

36

the Election Law prohibits political organizations from using the words "Independence" and "Independent" in their names out of concerns that unaffiliated voters (i) were or would mistakenly enroll in the (now-defunct) Independence Party when they intended to be unaffiliated, or (ii) nominate or vote for an Independence Party candidate mistakenly believing that the candidate was the representative of all unaffiliated voters. (*See* A. 101-102, 121-122.) For example, the Legislature had received reports that unaffiliated voters had been "confused by the name of the Independence Party," Senate Introducer's Mem., *in* Bill Jacket for ch. 671, *supra*, at 6, and voters believed that they were not affiliated with any party, when they were actually enrolled as members of the Independence Party (A. 121-122; *see* A. 65-71).

Walden's arguments in response lack merit. *First*, Walden primarily and wrongly asserts that defendants must satisfy strict scrutiny and show that the challenged naming provisions are both narrowly tailored and necessary to prevent voter confusion. *See* Br. at 28-32. Because the burden imposed by the challenged naming provisions is not severe, strict scrutiny is not the standard. Accordingly, it is immaterial that Walden believes that the State could reduce voter confusion in less restrictive

ways. The State need not choose the least restrictive way to achieve its goal. *See Timmons*, 520 U.S. at 363-64.

*Second*, Walden incorrectly argues that the State's interest in preventing voter confusion does not justify even a minimal burden on First Amendment rights because there is no "real risk of confusion." Br. at 32. The Legislature disagreed, however, and under *Anderson-Burdick*, the court should defer to the Legislature's "coherent account," *SAM Party of N.Y.*, 987 F.3d at 278, which was supported by direct reports of confusion by voters. (*See* A. 121-122; *see also* A. 65-71). Although Walden may disagree with the merit of those reports, the State is not required to provide "elaborate, empirical verification" of its concerns to support its election laws. *Timmons*, 520 U.S. at 364.

## B.   Walden Has Not Satisfied the Remaining Preliminary Injunction Requirements.

Walden has also failed to establish the remaining requirements for a preliminary injunction. In First Amendment challenges, "[t]he presence of irreparable injury to First Amendment rights . . . turns on whether the plaintiff has shown a clear likelihood of success on the merits." *SAM Party of N.Y.*, 987 F.3d at 278 (quotation marks omitted). Accordingly,

38

because Walden failed to establish a likelihood of success on the merits of his First Amendment claim, the district court correctly concluded that he failed to establish irreparable harm. *See id.*

Walden also cannot show irreparable harm because the challenged naming provisions have not and will not chill his speech or prevent him from delivering his political message of independence to voters. Walden concedes that his "campaign is actively engaged in promoting its message" and has been "soliciting financial contributions by stressing [his] message of political independence." (A. 24-25.) In addition, as the district court found, Walden maintains a "robust campaign website" where he describes his platform, priorities, and policy commitments. (A. 173.)

The public interest and balance of equities also do not support a preliminary injunction. "In a suit against the government, balancing of the equities merges into [the court's] consideration of the public interest." *SAM Party of N.Y.*, 987 F.3d at 278. Here, Walden concedes that the State has a compelling interest in preventing voter confusion. Br. at 28. As discussed above (at 36-38), that compelling interest outweighs Walden's interest in using the specific word Independence to identify his organization in his nominating petition. *See SAM Party of N.Y.*, 987 F.3d at 278.

Moreover, contrary to Walden's argument, returning the law to the status quo that existed before the challenged naming provisions were added in 2022 would not be in the public interest. *See* Br. at 34-35. Before 2022, as the Legislature found, unaffiliated voters were confused by the word Independence in party names and incorrectly registered for the Independence Party when they thought they were registering as unaffiliated voters. See *supra* at 8-9, 36-37. Walden's second-guessing of the Legislature's justification for prohibiting the word "Independence" in the names of parties and independent bodies is insufficient to show that the equities or public interest tilt in his favor. *SAM Party of N.Y.*, 987 F.3d at 277-78.

## CONCLUSION

The Court should affirm the district court's denial of Walden's motion for a preliminary injunction.

Dated:  New York, New York
        April 14, 2025

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for State Appellees


By:   */s/ Daniel S. Magy*
        DANIEL S. MAGY
        Assistant Solicitor General

BARBARA D. UNDERWOOD               28 Liberty Street
  *Solicitor General*              New York, NY 10005
ESTER MURDUKHAYEVA                 (212) 416-6073
  *Deputy Solicitor General*
DANIEL S. MAGY
  *Assistant Solicitor General*
      *of Counsel*

41

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Emily Paule, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 7,835 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7) and the corresponding local rule.

_/s/ Emily Paule_